## In re COORDINATED PRETRIAL PROCEEDINGS IN PETROLEUM PRODUCTS ANTITRUST LITIGATION.

### No. MDL–150–WPG.

United States District Court,
C. D. California.

Sept. 30, 1981.

---

Alison B. Swan, Chief Counsel, Richard A. Alcorn, Asst. Atty. Gen., Antitrust Div., Phoenix, Ariz., for State of Arizona.

Atty. Gen. George Deukmejian by Michael Ivan Spiegel, Wayne M. Liao, William S. Clark, Charles M. Kagay, Deputy Attys. Gen., Dept. of Justice, State of Cal., San Francisco, Cal., Peter Shack, Deputy Atty. Gen., Dept. of Justice, State of Cal., Los Angeles, Cal., for State of California.

James Smith, Atty. Gen., by Jerome W. Hoffman, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., Stephen L. Dunne, Del Mar, Cal., for State of Florida.

Nancy K. Nakata, Asst. Atty. Gen., Antitrust Div., Salem, Or., for State of Oregon.

Ken Eikenberry, Atty. Gen. by John R. Ellis, James Kirkham Johns, Jon P. Ferguson, Asst. Attys. Gen., Consumer Protection and Antitrust Div., State of Wash., Seattle, Wash., for State of Washington.

Hughes, Hubbard & Reed, New York City and Los Angeles, Cal. by Ronald C. Redcay, Los Angeles, Cal., Otis Pratt Pearsall, Philip H. Curtis, New York City, Donald A. Bright, Associate Gen. Counsel, Howard S. Fredman, Los Angeles, Cal., for defendant Atlantic Richfield Co.

Procopio, Cory, Hargreaves & Savitch by Robert G. Russell, Jr., Paul B. Wells, San Diego, Cal., for Cities Service Co.-Cities Service Oil Co.

Latham & Watkins by Philip F. Belleville, Los Angeles, Cal., for Conoco, Inc.

McCutchen, Black, Verleger & Shea by Philip A. Verleger, David A. Destino, Los Angeles, Cal., Robert L. Norris, Houston, Tex., for defendant Exxon Corp.

Dechert Price & Rhoads by Robert A. Cohen, New York City, Philip J. Englund, Los Angeles, Cal., for defendant Getty Oil Co.

Harry P. Davis, Jr., Barton D. Whitman, Houston, Tex., for defendant Gulf Oil Co.-U. S.

Donovan, Leisure, Newton & Irvine, Washington, D. C., and New York City by Andrew J. Kilcarr, Washington, D. C., and Stephen D. Houck, New York City, Sheppard, Mullin, Richter & Hampton by Joseph F. Coyne, Jr., Los Angeles, Cal., for defendant Mobil Oil Corp.

Sullivan & Cromwell by John W. Dickey, Richard Menaker, New York City, Adams, Duque & Hazeltine by John H. Brinsley, Robert M. Mitchell, Los Angeles, Cal., Neal Lehman, Bartlesville, Okl., for defendant Phillips Petroleum Co.

Howrey & Simon by William Simon, William O'Brien, Washington, D. C., Robert J. Decker, Houston, Tex., for defendant Shell Oil Co.

Pillsbury, Madison & Sutro by Richard J. MacLaury, Robert A. Mittelstaedt, San Francisco, Cal., for Standard Oil Co. of California.

M. J. Keating, Chicago, Ill., Paul, Hastings, Janofsky & Walker by Oliver F.

Green, Jr., Los Angeles, Cal., for Standard Oil Co. (Indiana).

Payne, Morehouse, Shafer & Harlow by Paul C. Shafer, Jr., Fairfield, Conn., for Standard Oil Co. (Ohio).

Robert M. Dubbs, Radnor, Pa., Pepper, Hamilton & Scheetz by John G. Harkins, Martha Hargrove, Philadelphia, Pa., for Sun Oil Co.

C. F. Kauzlauskas, White Plains, N. Y., Leslie C. Randall, Los Angeles, Cal., for Texaco, Inc.

Brobeck, Phleger & Harrison by John Sparks, San Francisco, Cal., E. A. McFadden, Robert G. Pott, Los Angeles, Cal., for Union Oil Co.

Blecher, Collins & Hoecker by Gary W. Hoecker, Los Angeles, Cal., for City of Long Beach.

Stephen B. Yoken, San Francisco, Cal., for McGraw-Hill.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM P. GRAY, District Judge.

The plaintiffs in these consolidated antitrust actions against several major oil companies are the Attorneys General of the States of Arizona, California, Florida, Oregon and Washington. They have filed motions for the certification of a plaintiff subclass consisting of all natural persons * residing in their respective states who have purchased motor gasoline at retail within such states during the periods covered by the complaints. These motions have been extensively briefed and argued and submitted for decision. For reasons set forth in this memorandum, they are denied.

It has been obvious ever since these cases were filed that the principal goal of the plaintiffs is to accomplish a recovery of antitrust damages on behalf of their citizens who have been obliged to pay allegedly inflated prices at the retail gasoline stations. However, in 1977 the Supreme Court rendered its decision in *Illinois Brick v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52

L.Ed.2d 707, which held that an indirect purchaser from a person that violates the antitrust laws may not recover damages. Most of the automobile owners that use gasoline produced by the defendants make their purchases directly from retail dealers, and only indirectly from the defendants that supply such dealers. Thus, the *Illinois Brick* decision necessarily dealt a traumatic blow to the plaintiffs' plans.

Subsequently, following the lead of *Royal Printing, Inc. v. Kimberly-Clark Corporation*, 621 F.2d 323 (9th Cir. 1980), and *In re Sugar Industry Antitrust Litigation*, 579 F.2d 13 (3d Cir. 1978), I inferred an exception to the strict holding in *Illinois Brick* and announced the ruling that " . . . the plaintiffs will be allowed to recover from the defendants for overcharges passed on by entities owned or controlled by the defendants." *See In re Coordinated Pretrial Proceedings, etc.*, 497 F.Supp. 218 (C.D.Cal. 1980).

Thus, under the present posture of this litigation, even assuming that the plaintiffs will be able to prove a horizontal conspiracy by the defendants to fix retail gasoline prices, they must also establish that the dealers from whom the plaintiffs (or proposed class members) bought at inflated prices were owned by or under the control of the defendant suppliers.

Counsel and the court have expressed mutual awareness that it would be completely impracticable in this action to litigate the control relationships between the respective defendants and each of their many thousands of dealers in order to determine which of the millions of retail transactions could result in liability to the defendants. Under these circumstances, the question that has beset the plaintiffs is how they can hope to show, on a class action basis, that the defendants' control over all of their dealers was so pervasive that they could fix the retail prices of gasoline without any uncontrolled discretion being exercised by the gasoline station operators that made the sales. In other words,

---

* Arizona has a slight variation that is immaterial here.

how could the participation of the retail dealer be disregarded in the setting of prices at which sales are made to the public.

I have had considerable sympathy for the plaintiffs as they faced the problem of *Illinois Brick*, and have given them somewhat extended opportunity to develop and assert just how they propose to surmount it. After several valiant written and oral attempts, the answer is clear, they simply cannot do it; *Illinois Brick* makes it impossible to proceed in these cases with the type of class that is here proposed.

The plaintiffs regularly have insisted that they can prove that the defendants, through horizontal conspiracy, established and controlled retail gasoline prices, that market forces thereby were superseded, and that dealer participation was insignificant. However, their explanations as to just how such control was exercised have been very general, somewhat vague, and occasionally inconsistent.

This court is mindful that the plaintiffs cannot be expected to prove their case at this stage of the proceedings. On the other hand, before certifying a class, I must be convinced that the requirements of Rule 23 of the Federal Rules of Civil Procedure have been met, including particularly the predominance of common questions of fact and law and that the litigation would be manageable. In doing so, I am not entitled to rely "... on the 'imagination' of [the plaintiffs'] counsel to provide solutions that will, at some point in the future, prevent ... individual issues from splintering the action into thousands of individual trials requiring years to litigate." *In re Hotel Telephone Charges*, 500 F.2d 86, 90 (9th Cir. 1974). From all of the contentions, as best I can understand them, the conclusion appears unavoidable that either *Illinois Brick* precludes recovery of damages growing out of purchases from dealers, or that the relationships between the respective defendants and each of their individual dealers would have to be litigated. Neither of these alternatives would justify a class action of the nature here proposed.

■ In urging that the participation of the retail dealers may be deemed inconsequential for class action purposes, the plaintiffs suggest, as one "string to their bow," that the defendants actively and vigilantly sought to persuade their dealers to adhere to the retail prices that the defendants recommended. However, for a wholesaler to *recommend* that its dealers charge a particular price is not a violation of laws against price fixing. To the extent that such efforts succeeded, they simply reflect the amount of "pass on" of the alleged wholesale overcharge that *Illinois Brick* says we may not even consider.

The plaintiffs make much of the "dealer discounts" that the defendants, allegedly on a conspiratorially coordinated basis, granted to and withdrew from their respective dealers. But such activities directly operated only upon the *wholesale* prices. The "saw tooth" charts submitted by the plaintiffs show what appear to be general immediate increases in retail prices in apparent response to the withdrawal of dealer discounts. But such a showing, in itself, establishes only the obvious fact that wholesale prices are a very important factor in the fixing of retail prices. The charts, being averages, do not show, or even suggest, nondiscretionary, automatic, specific price increases by all dealers. Some of the dealers, probably most, may have raised their retail prices to pass on to their customers the full amount of the wholesale price increases occasioned by the withdrawal of dealer discounts. Others may have absorbed such increases in whole or in part. The defendants probably did make suggestions as to the retail prices and sought to persuade their dealers to follow them. The saw tooth charts suggest that these efforts met with considerable success. However, to the extent that suggestion and persuasion were involved, discretion remained in the dealer, and *Illinois Brick* precludes the purchaser from looking beyond him to the defendant wholesaler.

■ The plaintiffs also make the stronger contention that the defendants' influence upon their dealers in fixing retail prices

went beyond recommendation or persuasion and amounted to coercion. Of course, for a wholesaler to use coercion to induce its dealers to accept its suggested retail prices constitutes a vertical conspiracy in violation of the Sherman Act. *See United States v. Parke, Davis & Co.*, 362 U.S. 29, 45, 80 S.Ct. 503, 512, 4 L.Ed.2d 505 (1960). *See also Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1355 (9th Cir. 1976).

For several reasons, the present litigation cannot proceed as a class action to the extent that the plaintiffs may rely upon an ability to establish vertical conspiracies. In the first place, such issues necessarily involve individual questions as to how each of the many dealers reacted to the alleged coercive pressure. Some people are more susceptible to attempts at coercion than others. This very fact makes it impossible to conclude that dealer participation may be ignored. But the need to consider how the thousands of dealers responded individually to the alleged coercion renders the case unmanageable as a class action. It also calls for inquiries that are precluded by *Illinois Brick*, namely, the extent to which the dealers gave way to coercion and passed on the artificially inflated charges to their own customers.

Also, in an earlier ruling in these cases (497 F.Supp. 218, 228 (C.D.Cal.1980)), this court held, for reasons therein discussed, that if the plaintiffs desire to pursue a theory of vertical conspiracy between the defendants and their dealers, they must join the dealers as defendants in the actions. The plaintiffs expressly have negatived any intention so to do; and, of course, such a step would inject so many individual issues as to make a class action practically impossible.

A third possible theory upon which the plaintiffs suggest that they may be able to avoid the *Illinois Brick* wall is to show that the arrangements between the defendants and their respective dealers were such that the physical transfer of gasoline from the former to the latter did not involve a "real sales transaction". The contention appears to be that a dealer had title to the gasoline

for only a brief moment in the course of the transfer from the defendant wholesaler to the consumer. Therefore, as I understand the argument, the dealer's position as a buyer was fictional and may be ignored and the consumer's purchase may be considered to have been made directly from the defendant wholesaler.

The relationships between the defendants and their dealers have not yet been displayed thoroughly in this litigation. Nonetheless, it is hard to accept the proposition that the dealers have played such an insignificant role in the distribution of gasoline. On the contrary, affidavits have been submitted by more than one hundred dealers asserting that they regularly determine for themselves the prices that they charge their gasoline customers, and that in doing so they take into account various market factors, including, but not limited to, the prices that they are charged by the defendants.

In any event, pursuit of the theory here discussed cannot support a class action. It describes a consignment relationship between defendant and dealer, and such a relationship is, in itself, a vertical conspiracy in violation of the antitrust laws. *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). Thus, the plaintiffs would have to join, as defendants, all of the participating dealers, as was discussed in my earlier memorandum in this matter (497 F.Supp. 218, 228 (C.D.Cal. 1980)).

From all of the foregoing, the conclusion appears inescapable that this court cannot properly ignore the participation of the retail dealers in the process of distributing gasoline from the defendants to the consumers. To do so would ignore the mandate of *Illinois Brick* and would fail to fulfill this court's obligation under Rule 23 of the Federal Rules of Civil Procedure.

The compelling nature of this conclusion is underlined by the current pendency of the antitrust litigation described in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977). It is a class action against most of the major oil companies that are defendants here, and is brought on behalf of all of their

retail gasoline dealers. It charges the defendants with a horizontal conspiracy to require their dealers to acquiesce in antitrust conduct as a condition to retaining their leases. Thus, the plaintiff class in *Bogosian* are seeking to recover, as direct purchasers, substantially the same dollars in damages that the present plaintiffs' proposed class are seeking, as indirect purchasers, from the same defendants. If the plaintiff class in *Bogosian* and the proposed plaintiff class here were both to succeed, the result would be the double recovery, trebled, that *Illinois Brick* envisaged and sought to forestall.

This court is aware of the likelihood that its refusal to certify the proposed class means that there is no practical way in which damages may be recovered for most individual gasoline purchasers, no matter how much the constantly increasing prices that they have paid may have stemmed from antitrust conduct on the part of the wholesale suppliers. However, this is the mandate of the Supreme Court in *Illinois Brick*. That decision laid down the doctrine that use of the treble damages weapon in the enforcement of the antitrust laws should be left altogether to the direct purchaser.

Accordingly, the plaintiffs' motion for certification of the proposed plaintiff individual consumer class is denied.

Pursuant to Title 28 U.S.C. § 1292(b), this court is "... of the opinion that ... [the order herein rendered] involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation ...." Accordingly, such order is certified for interlocutory appeal.