Ray MARSHALL, Secretary of Labor, U. S. Department of Labor, Plaintiff-Appellant,

v.

SILVER CREEK PACKING CO., a corporation, Defendant-Appellee.

No. 78–1200.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1980.

Decided March 25, 1980.

Paul E. Myerson, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

Ted R. Frame, Frame & Courtney, Coalinga, Cal., for defendant-appellee.

Before GOODWIN and SCHROEDER, Circuit Judges, and EAST *, District Judge.

PER CURIAM.

The Secretary of Labor appeals the denial of a petition for an order restraining Silver Creek Packing Co. from violating the Farm Labor Contractor Registration Act (FLCRA or "the Act"), 7 U.S.C. §§ 2041, et seq. The district court found that Silver Creek was exempt from the FLCRA's registration and disclosure provisions and entered judgment for the company We reverse.

Silver Creek picks and packs cantaloupes for a profit. For a "packing expense," which reflects the company's costs and includes a fixed profit margin, the company harvests, processes, and markets the melon crops of individual growers.[1] Silver Creek does not directly assess farmers for the "packing expense," but deducts its fee from the proceeds realized from marketing the produce, returning the balance to the grower. Because Silver Creek takes its fee "off the top," the individual grower bears the loss if the market price is less than the sum of his overhead growing costs plus the corporation's "packing expense." The company takes a loss only if the market price does not cover its "packing expense." [2]

To obtain workers for its harvesting operations, Silver Creek recruits and hires migrant laborers. The Secretary alleges that, because of its hiring activities, Silver Creek is a "farm labor contractor," subject to the registration and disclosure requirements of the Farm Labor Contractor Registration Act.[3] Silver Creek responds, and the district court held, that the company falls within an exemption from the FLCRA's coverage as a "packing shed operator * * who personally engages in [hiring activities] for the purpose of supplying migrant workers solely for [its] own operation." 7 U.S.C. § 2042(b)(2).

■ In this appeal, the Secretary contends that Silver Creek neither "personally engages" in labor contracting nor hires migrant workers "solely" for its operations. Both conditions are necessary for exemption under § 2042(b)(2); neither alone is sufficient. Accordingly, if either of the Secretary's contentions is valid, Silver Creek is not exempt.

■ We reject the Secretary's argument that Silver Creek does not "personally" engage in labor contracting. The arguments presented on this issue are indistinguishable from those raised by the parties in *Marshall*

---

* The Honorable William G. East, United State District Judge for the District of Oregon, sitting by designation.

1. The amount of Silver Creek's profit margin is not specified in the record.

2. The effect of this arrangement, unlike that in *Marshall v. Green Goddess Avocado Corp.*, 615 F.2d 851 (9th Cir. 1980), where the grower's profit is fixed and the corporation's profit or loss depends on market conditions, is that Silver Creek's profit is virtually guaranteed, and the farmers' income varies with market fluctuations.

3. 7 U.S.C. § 2042(a) and (b), defining "farm labor contractor," read in relevant part as follows:

"As used in this chapter—

"(a) The term 'person' includes any individual, partnership, association, joint stock company, trust, or corporation.

"(b) The term 'farm labor contractor' means any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers (excluding members of his immediate family) for agricultural employment. Such term shall not include—

(1) any nonprofit charitable organization, public or nonprofit educational institution, or similar organization;

(2) any farmer, processor, canner, ginner, packing shed operator, or nurseryman who personally engages in any such activity for the purpose of supplying migrant workers solely for his own operation;

(3) any full-time or regular employe of any entity referred to in (1) or (2) above who engages in any such activity solely for his employer on no more than an incidental basis."

Under 7 U.S.C. § 2043(a), a "farm labor contractor" must obtain a certificate of registration from the Secretary of Labor. 7 U.S.C. § 2045—"Obligations and prohibitions"—requires, among other things, that a "farm labor contractor" disclose various conditions of employment to laborers at the time they are recruited and refrain from recruiting or hiring illegal aliens.

*v. Green Goddess Avocado Corp.*, 615 F.2d 851 (9th Cir. 1980), decided this day. For the reasons guiding our holding in that case, we find that Silver Creek, as a corporation, can, and does, "personally" hire farm laborers.

■ Silver Creek does not, however, satisfy the second condition of the (b)(2) exemption. Its labor contracting activities are not "solely" for its own operations.

In *Marshall v. Coastal Growers Ass'n*, 598 F.2d 521 (9th Cir. 1979), this court held that nonprofit agricultural cooperatives, which hired and paid workers who harvested the crops of grower-members, could not claim (b)(2) exemptions because their hiring activities were not for their own operations, but for the operations of their members. *Id.* at 524–25.

Silver Creek, despite its corporate structure, resembles the *Coastal Growers* cooperatives in several significant respects. First, Silver Creek deducts a fixed fee from market proceeds, and returns the balance to the grower. Second, Silver Creek never owns the fruit it handles and assumes no risk of loss unless the market falls below the packing costs.[4] Finally, while Silver Creek harvests and markets the produce of nonshareholders, it also processes the produce of growers who exercise control over its operations. The corporation's four shareholders are all melon growers whose crops Silver Creek handles.

Silver Creek contends that it differs from the *Coastal Growers* cooperatives because it

realizes a profit. But the profit distinction is immaterial. For while Silver Creek hires migrant workers for its own operations and benefits from their efforts, that hiring is not "solely" for its operations. The farmers whose fruit is picked benefit directly from Silver Creek's hiring activities.

This "direct benefit" concept may be understood by reference to the facts in *Marshall v. Green Goddess Avocado Corp., supra.* The corporation in *Green Goddess* pays farmers for fruit while the fruit is on the tree. Green Goddess harvests the fruit, markets it, and retains all of the market proceeds. Growers, after selling their crops to Green Goddess, are indifferent about whether the crops are harvested. If the fruit rots, that is Green Goddess's loss; the grower has been paid. Consequently, when Green Goddess hires migrant workers, it is solely for its own operations. It alone has an interest in their efforts.

The farmers who contract with Silver Creek, however, have a direct stake in the harvesting of their crops. After the corporation deducts its "packing expense" from market proceeds, the growers receive the remainder. If their melons are not picked, the growers receive nothing. Because the growers are dependent on Silver Creek's farm labor contracting, those activities cannot be "solely" for the corporation's operations.

Our application of the (b)(2) exemption conforms with the Secretary's regulations interpreting the FLCRA.[5] Furthermore, it

4. Testimony at trial established that if a truckload of melons should be destroyed between a grower's field and Silver Creek's packing shed, Silver Creek's insurance carrier would reimburse the grower, at least to the extent of the grower's fixed production costs.

5. 29 C.F.R. § 41.17 reads in relevant part as follows:

"(a) * * * The Act was intended to regulate the practices of all persons functioning in the capacity of middlemen between the farmer, processor, etc., and the migrant worker. Thus, the exclusion applies only in those situations where the normal functions of the middlemen are performed by the farmer, processor, etc., solely for himself and should any of these persons perform in the

role of middleman, such as where the activities are in behalf of other employers, producers, processors, etc., in addition to himself, the exclusion would not apply. * * *.

"(b) For example, if a processor solicits, recruits, hires, furnishes or transports migrant workers to be used in the harvesting of crops which he has in fact purchased through a contract with the farmer and under whose contractual terms title to the crops is vested in the processor before the crop has been harvested, the exemption would apply, because the processor would be supplying migrant workers solely for his own operation. Where the processor or any other person acts as the conduit through whom the migrant workers are made available to third parties, even though the crops on which the

is consistent with the Act's legislative intent, the regulation of "middlemen" labor contractors.[6] Silver Creek, for a fee, provides workers to harvest individual growers' crops.[7] It is a third party in a position to exploit both farmers and workers. It engages in precisely the kind of activity that the FLCRA seeks to regulate.

The district court's finding of exemption under § 2042(b)(2) falls before *Marshall v. Coastal Growers Ass'n, supra.*

Reversed.

migrant workers are employed are the subject matter of a contract to purchase (as distinguished from a contract of sale) and will be used in the processing, canning, etc., the exemption does not apply."

**6.** *See Marshall v. Green Goddess Avocado Corp.*, 615 F.2d 851, 856 n. 11 (9th Cir. 1980).

**7.** Silver Creek does not directly assess farmers for the "packing expense," but deducts that cost from market proceeds, so it assumes the minimal risk that the market will not cover its fee. However, because the "packing expense" is taken "off the top," Silver Creek's risk of loss is negligible compared to that of the growers.