**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**GREEN GODDESS AVOCADO CORPO-RATION, a corporation, Defendant-Appellee.**

No. 78–3704.

United States Court of Appeals, Ninth Circuit.

March 25, 1980.

Elizabeth A. Smith, San Diego, Cal., argued, Jack A. Diamond, U. S. Dept. of Labor, Washington, D. C., on brief, for plaintiff-appellant.

Paul E. Myerson, U. S. Dept. of Labor, Washington, D. C., argued, Reg A. Vitek, San Diego, Cal., on brief, for defendant-appellee.

Before GOODWIN and SCHROEDER, Circuit Judges, and EAST *, District Judge.

GOODWIN, Circuit Judge:

The Secretary of Labor appeals the denial of a petition for an order restraining Green Goddess Avocado Corp. from continuing alleged violations of the Farm Labor Contractor Registration Act (FLCRA or "the. Act"), 7 U.S.C. §§ 2041, *et seq.* The district court found that Green Goddess was exempt from the FLCRA's registration and disclosure provisions and entered judgment for the company. We affirm.

Green Goddess processes and sells avocados and limes for a profit. To obtain fruit

---

* The Honorable William G. East, United States District Judge for the District of Oregon, sitting by designation.

for its operations, it buys both harvested fruit and fruit which is still on the tree, paying farmers an agreed price per pound. If Green Goddess purchases unpicked fruit, it hires migrant workers to harvest the fruit and deducts the costs of this labor from the previously negotiated price per pound that the farmer receives. In these circumstances, Green Goddess assumes the risk of loss before harvest and completely supervises the migrant workers and the harvesting process. When the fruit is marketed, after packing, Green Goddess retains all of the proceeds.

Under the Farm Labor Contractor Registration Act, "farm labor contractors" must comply with certain registration and disclosure requirements which, the Secretary alleges, Green Goddess has not satisfied.[1] There is no question that, because of its hiring activities, Green Goddess is a "farm labor contractor," as defined by the Act,[2] unless it falls within one of the statutory exemptions from that definition. Green Goddess claims, and the district court agreed, that the corporation is exempt from the FLCRA's registration and disclosure requirements as a "packing shed operator * * * who personally engages in [hiring

activities] for the purpose of supplying migrant workers solely for [its] own operation." 7 U.S.C. § 2042(b)(2).

The Secretary does not argue that Green Goddess' labor contracting is not "solely for [its] own operation." Because the company buys the fruit from the farmers before harvest and bears all risk of profit or loss from its operation, that condition for exemption is satisfied. The only issue presented in this appeal, then, is whether Green Goddess "personally" engages in hiring activities, as required under § 2042(b)(2).[3]

The contending positions are easily summarized: to the Secretary, "personally" means "in person"; to Green Goddess, it means "directly." The Secretary argues that, because corporations can act only through their agents, and never "in person," Green Goddess cannot "personally" engage in hiring activities and does not qualify for the (b)(2) exemption. Green Goddess responds that this reading of "personally" is overbroad. It asserts that when a corporation hires directly, through its agent-employees, rather than indirectly, through some independent third party, it is acting "personally" and may claim a (b)(2) exemption.

---

1. Under 7 U.S.C. § 2043(a), a "farm labor contractor" must obtain a certificate of registration from the Secretary of Labor. Title 7 U.S.C. § 2045—"Obligations and prohibitions" —requires, among other things, that a "farm labor contractor" obtain a registration certificate from the Secretary of Labor, disclose various conditions of employment to laborers at the time they are recruited and refrain from recruiting or hiring illegal aliens.

2. Title 7 U.S.C. § 2042(a) and (b), defining "farm labor contractor," read in relevant part as follows:
"As used in this chapter—
(a) The term 'person' includes any individual, partnership, association, joint stock company, trust, or corporation.
(b) The term 'farm labor contractor' means any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers (excluding members of his immediate family) for agricultural employment. Such term shall not include—
(1) any nonprofit charitable organization, public or nonprofit private educational institution, or similar organization;

(2) any farmer, processor, canner, ginner, packing shed operator, or nurseryman who personally engages in any such activity for the purpose of supplying migrant workers solely for his own operation;
(3) any full-time or regular employe of any entity referred to in (1) or (2) above who engages in any such activity solely for his employer on no more than an incidental basis."

3. The court in *Marshall v. Coastal Growers Ass'n*, 598 F.2d 521 (9th Cir. 1979), did not consider this issue in rejecting growers' associations' claims of exemption under 7 U.S.C. § 2042(b)(2). A claimant for (b)(2) exemption must establish that it "personally" hires workers and that this hiring is "solely for [its] own operation." Both conditions are necessary; neither alone is sufficient. Accordingly, once the *Coastal Growers* court found that the defendant agricultural cooperatives were not hiring "solely" for their own operations, it had no need to determine whether the incorporated cooperatives satisfied the second, "personally," condition.

The analysis is necessarily speculative. Because no legislative history explains why Congress added "personally" to the (b)(2) exemption when it amended the FLCRA in 1974,[4] the parties attempt to support their contending definitions through a series of inferences from semantics, statutory construction, and public policy.

■ The parties' first, and simplest, level of inference is semantic. Green Goddess contends that because § 2042(a) defines "person" as including corporations as well as individuals,[5] corporations must be able to act "personally" for purposes of the (b)(2) exemption. The Secretary responds, and we agree, that the two words need not be given identical meanings merely because one is derived from the other. Indeed, the same word may, depending on context, have different meanings within the same statute.[6]

In a similarly semantic vein, the Secretary observes that § 2042(b)(2) applies to "any operator" who engages in labor contracting "solely for *his* own operation" (emphasis added). Because the personal pronoun "his" normally refers only to individuals, the Secretary reasons, "personally" must not apply to corporations.

This analysis, however, cuts both ways. Under § 2042(b), a "farm labor contractor" is defined as "any person who, for a fee, either for *himself* or on behalf of another person" engages in various hiring activities (emphasis added). If the Secretary's reasoning concerning the use of "his" in the (b)(2) exemption were applied, consistently, to the use of "himself" in § 2042(b), only individuals could be "farm labor contractors" within the meaning of the Act; corporations like Green Goddess would not be covered by the FLCRA.

We find that these semantic arguments, while ingenious, support inconclusive or inconsistent results. On balance, none is persuasive.

The second level of analysis is more complex. The parties support their definitions of "personally" by engaging in a sort of statutory exegesis, analyzing the relationship of the (b)(2) exemption's amendment to other 1974 FLCRA amendments.

The addition of "personally" to § 2042(b)(2) was first suggested in the July 1974 Senate version of the FLCRA amendments which would have changed the original (b)(2) exemption substantially. The Senate proposal would have excluded from the Act's definition of "farm labor contractor"

"[A]ny farmer, processor, canner, ginner, packing shed operator, or nurseryman (A) who *personally* engages in any [farm labor contracting] activity for the purpose of supplying migrant workers solely for his own operation; or (B) who *indirectly* engages in any such activity *through an agent* or by contract where he first determines that the person so engaged possesses a certificate from the Secretary * * *." (emphasis added).[7]

Except for the term "personally," the language of the proposed subsection (A) was

---

**4.** Although Congress extensively debated other revisions of the FLCRA in 1974, neither of the parties has cited any commentary concerning the addition of "personally" to § 2042(b)(2), and our own review of legislative history has disclosed none.

**5.** *See* 7 U.S.C. § 2042(a), *supra* note 3.

**6.** *See Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932):

"Most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section. Undoubtedly, there is a natural pre-

sumption that identical words used in different parts of the same act are intended to have the same meaning. [citation omitted]. But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent."
*Accord, Chugach Natives, Inc. v. Doyon, Ltd.*, 588 F.2d 723, 725–26 (9th Cir. 1978).

**7.** S.Rep. No. 93–1206, 93d Cong. 2d Sess. (1974) *reprinted in* 13057–9 Senate Misc. Reports on Public Bills IX, Calendar No. 1146 at 12.

identical to that of the then-existing (b)(2) exemption. The proposed subsection (B), which would have exempted operators who indirectly hired through registered farm labor contractors, was completely new. In the final version of the amendments, however, the proposed subsection (B) was deleted. Congress opted, instead, for a more direct approach, punishing the use of unregistered contractors, rather than exempting operators who hired through registered contractors.[8]

Despite the deletion of the proposed subsection (B), the term "personally" from the Senate version was added, without explanation, to § 2042(b)(2). The Secretary and Green Goddess agree that "personally" in the proposed subsection (A) and "indirectly * * * through an agent" in the deleted subsection (B) were mutually exclusive. They disagree, however, about the meaning of "indirectly * * * through an agent."

The Secretary reasons that, because operators' employees are their "agents," any time they hire through their employees, rather than in person, they are acting "indirectly * * * through an agent," and not "personally." Because a corporation can act only through its agents, it cannot act "personally" under the present § 2042(b)(2) and is not exempt.

Conversely, Green Goddess contends that "agent" in this context means some third party not directly controlled by the employer. Under this view, a corporation is exempt as "personally" engaged in hiring if its employees contract with farm laborers, but is not exempt if it utilizes the services of an independent contractor to secure migrant workers.

█ We find Green Goddess's arguments convincing. If the (b)(2) exemption were limited to those operators acting in person, the exemption described in § 2042(b)(3) would be meaningless. That exemption excludes from the Act's requirements "any full-time or regular employe of any entity referred to in [(b)(1) or (b)(2)] who engages in any such activity solely for his employer on no more than an incidental basis." Because this language assumes that employees may act on behalf of operators exempt under (b)(2), the Secretary's contention that only those acting "in person" are exempt under § 2042(b)(2) must be rejected. Corporations may "personally" engage in farm labor contracting through their employees.

Initially, this interpretation of "personally" may seem to present potential for abuse: corporations could simply hire "crew leaders" and call them "employees," sheltering the corporations from the FLCRA's registration and disclosure provisions. But § 2042(b)(3) exempts only those "regular" or "full-time" employees who engage in hiring solely for their employers "on no more than an incidental basis" from the definition of "farm labor contractor," and § 2043(c) imposes penalties for utilizing the services of nonexempt unregistered contractors. In practice, most "crew leader-employees" would engage in labor contracting activities on more than an "incidental basis" and would not be eligible for the (b)(3) exemption. If these employees did not register, the employer corporations would be subject to penalties under § 2043(c) for using their services. *Compare Usery v. Golden Gem Growers, Inc.*, 417 F.Supp. 857 (M.D.Fla.1976) *with Marshall v. Heringer Ranches, Inc.*, 466 F.Supp. 285, 287–88 (E.D. Cal.1979). The potential for evading FLCRA through such "sheltering," then, is insubstantial.[9]

---

**8.** Title 7 U.S.C. § 2043(c), enacted in 1974, directly prohibits hiring through unregistered farm labor contractors:

"No person shall engage the services of any farm labor contractor to supply farm laborers unless he first determines that the farm labor contractor possesses a certificate from the Secretary that is in full force and effect at the time he contracts with the farm labor contractor."

**9.** The Secretary asserts that exempting corporations under § 2042(b)(2) would create an anomaly: corporations whose employees engage in farm labor contracting on more than an incidental basis would be exempt under (b)(2), but the employees who engaged in such activity would be subject to the Act's registration and disclosure requirements. This result might be "anomalous," but it would not be unique. Under § 2042(b)(1), various nonprofit corpora-

■ Our conclusion that corporations may act "personally" for purposes of § 2042(b)(2) is consistent with the general legislative intent underlying the FLCRA. The purpose of the Act and its amendments is to regulate independent "middlemen" who are in a position to exploit both operators and workers.[10] While enforcement of the FLCRA usually focuses on individual migrant "crew leaders," this circuit recently held that incorporated growers' associations that hire and pay workers who harvest crops on grower-members' farms are "farm labor contractors" subject to the Act's registration and disclosure requirements. *Marshall v. Coastal Growers Ass'n*, 598 F.2d 521 (9th Cir. 1979).

■ In *Coastal Growers*, the defendant associations represented, at least potentially, independent intermediaries. Here, however, Green Goddess' employees who engage in hiring are not acting independently, but as agents of the corporation. There are no "middlemen."[11]

We also recognize that, because most "processors," "canners," and "packing shed operators," and many "farmers" are incorporated, limiting the (b)(2) exemption to unincorporated operators would greatly restrict the scope of the exemption. The Secretary does not contend that the original (b)(2) did not exempt corporations. Instead, he argues that the purpose of the 1974 FLCRA amendments was to tighten the Act's coverage and that the addition of "personally" should be construed, accordingly, to limit (b)(2) to hiring by unincorporated operators. It is likely, had Congress intended the addition of "personally" to have such significant effect, that there would have been some legislative discussion of that change. However, nothing in the legislative history of the 1974 amendments reflects any recognition of, much less support for, the asserted distinction between incorporated and unincorporated operations.[12] The addition of a single ambiguous

tions are exempted from the definition of "farm labor contractor," but employees of those corporations who engage in significant labor contracting activity cannot claim a (b)(3) exemption and are required to register.

10. *See* 120 Cong.Rec. 13402–409, 33743–48 (1974); 109 Cong.Rec. 10625–626 (1963); S.Rep. No. 93–1295, 93d Cong., 2d Sess. ——, *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 6441, 6442–43; S.Rep. No. 202, 88th Cong., 1st Sess. ——, (1963), *reprinted in* [1964] U.S.Code Cong. & Admin.News, pp. 3690, 3691–92.

The thrust of the legislative history is best summarized by an excerpt from Senate Report No. 93–1295, *supra*:

"[T]he contractor has been permitted to exercise an inordinate amount of leverage over the workplace situation. The contractor's unchallenged bargaining position is clearly one of detriment to both the farmworker and operator. Patterns of abuse have been well documented in Congressional hearings over the years.

"It is unfortunately an all too common experience for workers to be abused by farm labor contractors. Testimony revealed that in many cases the contractor: exaggerates conditions of employment when he recruits workers in their home base, or that he fails to inform them of their working conditions at all; transports them in unsafe vehicles; fails to furnish promised housing, or else furnishes substandard and unsanitary housing; op-

erates a company store while making unitemized deductions from workers' paychecks for purchases, and pays the workers in cash without records of units worked or taxes withheld.

"Evidence has also emerged of contractor exploitation of farmers. The contractor would agree to arrive with a crew on a designated date, and simply fail to show up because better opportunities presented themselves elsewhere. This would leave the farmer with no help to harvest his ripening crop. More common is the practice of leaving after the first picking when the second and third pickings become more difficult, and consequently less profitable." *Id.* at 6442.

11. Even if Green Goddess employees who engage in hiring were characterized as independent third parties, they, and not the corporation, would be "farm labor contractors" subject to the FLCRA's requirements. This may be illustrated by analogy to *Coastal Growers, supra*. Employee-agents, as intermediaries, would occupy a position similar to that of the growers' associations, and Green Goddess, which utilizes their services, would be the functional equivalent of the individual farmers in that case.

12. It is significant that, although the Secretary contends the (b)(2) exemption was amended to tighten the FLCRA's coverage, the Senate report on the 1974 amendments, in describing provisions strengthening enforcement, does not

word, without more, does not warrant the conclusion that Congress intended to drastically restrict the (b)(2) exemption.[13]

We reject the Secretary's definition of "personally" and find that corporations may claim exemption under § 2042(b)(2). Because the FLCRA is a remedial statute, exemptions from its coverage are to be narrowly construed. *Marshall v. Coastal Growers Ass'n*, 598 F.2d at 526. A party claiming exemption from such legislation bears the burden of demonstrating that its activities are "plainly and unmistakably within [the] terms and spirit" of the exemption. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Brennan v. Keyser*, 507 F.2d 472, 477 (9th Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). We conclude, after considering semantics, statutory construction, and legislative intent, that Green Goddess has met this burden.

Affirmed.

mention the addition of "personally" to § 2042(b)(2). S.Rep. No. 93–1295, 93d Cong. 2d Sess. ____, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6441, 6441–6446.

**13.** The Secretary cites an opinion letter by the Administrator of the Department of Labor's Wage and Hour Division, the officer charged with interpreting the FLCRA. In that letter, the Administrator stated that "[b]y adding the word 'personally' [to § 2042(b)(2)] in 1974, Congress apparently narrowed the applicability of this exemption to an individual." Opinion Letter of the Wage-Hour Administrator No. 1486, Lab.L.Rep. Wages-Hours Administrative Rulings (CCH) ¶ 31,135 (Oct. 3, 1977). The Administrator did not, however, endorse the Secretary's position that the exemption can never apply to a corporation:

"[I]f a farmer is a corporation, the term 'personally' may apply if the corporation is under the effective control of an individual whose authority is equivalent to that of a sole proprietor, and if that individual acts in person with respect to the farm labor contracting activities for the corporation." *Id.* This administrative interpretation of the Act by the enforcing agency, if reasonable, is entitled to deference. *See, e. g., Griggs v. Duke Power Co.*, 401 U.S. 424, 433–434, 91 S.Ct. 849, 854–855, 28 L.Ed.2d 158 (1971); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). We find, though, that because the Administrator, like the Secretary, defined "personally" as "in person," his interpretation of (b)(2) would render the (b)(3) exemption for employee-agents virtually meaningless. That interpretation is unreasonable, and we decline to follow it.