783 F.2d 941
 103 Lab.Cas. P 34,745, 4 Fed.R.Serv.3d 42
 Salvador MENDOZA, Fidel Garcia, Marcial Vazquez, Artemio
Medina, individually and on behalf of all others
similarly situated, Plaintiffs-Appellants,
v.
WIGHT VINEYARD MANAGEMENT, Douglas Wight, J. Alex Vyborny;
Richard Forman and David Abreu d/b/a David Abreu Vineyard
Management; Kennedy S. Cairns, d/b/a K.A. Cairns Co.,
United Vintners, Inc., Defendants-Appellees.
 No. 84-2587.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1985.
Decided Feb. 26, 1986.
As Amended on Denial of Rehearing April 3, 1986.
 
 Richard A. Kohn, San Francisco, Cal., for plaintiffs-appellants.
 Daniel T. Berkley, Pechner, Dorefman, Wolffe, Rounick & Cabot, David J. Berman, Berman & Carter, Michael A. Adelman, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before BROWNING, Chief Judge, and HUG and ALARCON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This action was brought by three farm workers individually and on behalf of others similarly situated against three vineyard management companies and United Vintners (now Heublein Wines), the owner or lessee of the vineyards involved in this suit. The complaint alleged the vineyard management companies had violated the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. Secs. 1801-1872 (1982) by failing to register as "farm labor contractors" as required by section 1811 of the Act, and that Heublein violated Section 1842 of the Act by employing unregistered "farm labor contractor[s]"; i.e., the appellee vineyard management companies. The vineyard management companies moved for summary judgment on the ground they came within an exemption from the registration requirements for "agricultural employer[s]." 29 U.S.C. Sec. 1803(b); see also 29 U.S.C. Sec. 1802(2). The motion was granted. See Mendoza v. Wight Vineyard Management, 579 F.Supp. 268 (N.D.Cal.1984).
 
 I.
 
 2
 The Act requires any person who engages in "recruiting, soliciting, hiring, employing, furnishing, or transporting" migrant or seasonal agricultural workers to abide by certain regulatory provisions regarding compensation, housing, food, transportation, safety, supplies, and other terms and conditions of employment. See 29 U.S.C. Secs. 1802(6)-(7), 1821-1844. It is undisputed that appellee vineyard management companies are subject to these regulatory provisions. The disputed issue is whether they are also subject to the provisions of the Act requiring "farm labor contractors" to register with the Secretary of Labor. 29 U.S.C. Sec. 1811.
 
 
 3
 The appellee vineyard management companies fall within the broad definition of "farm labor contractor" found in section 1802(7) of the Act. However, an "agricultural employer" is exempt from the registration requirement. 29 U.S.C. Sec. 1803(b). Appellee vineyard management companies contend, and the district court held, that each is exempt from the registration requirement as an "agricultural employer."
 
 
 4
 An "agricultural employer" is defined to include any person who "owns or operates" a farm and "recruits ... any migrant or seasonal agricultural worker." 29 U.S.C. Sec. 1802(2). Appellee vineyard management companies argue they fall within this express language because they "operate" vineyards. They contend their exclusion serves the purpose of the exemption because Congress sought to free from registration those employers who had a fixed location and so could be readily found, and appellee vineyard management companies fall in this category.
 
 
 5
 On the other hand, appellants argue that in the context of the whole statute, the words "owns or operates" do not have the literal meaning appellees attribute to them. They agree that Congress intended to exclude fixed situs employers but argue that only those were to be exempt who owned or leased the land itself or owned the crop. They also argue that even these were not within the exemption if they served as "middlemen" between workers and owners, by providing farm labor for a fee, as, they argue, appellee vineyard management companies do.
 
 
 6
 We believe appellees have the better of the argument.
 
 II.
 
 7
 The significant characteristics of appellee vineyard management companies are described in the district court opinion as follows:
 
 
 8
 The vineyard management companies herein hold contracts under which they are responsible for performing "all acts and services which may be necessary or desirable in order to farm and manage the vineyards in a good and farmerlike manner and in accordance with the best viticultural practices being employed from time to time in the Napa Valley." See Vineyard Management Contracts, Section 1.2. Such duties include such varied activities as budding, irrigation, tilling, discing, weed control, thinning, training, pruning, tying, replanting, and repair of trellises; applying fertilizers, pesticides, frost protection; removing and replacing diseased vines, harvesting, furnishing all labor and equipment. Id.
 
 
 9
 Thus, under the contracts, the companies do much more than merely supply labor to Heublein. The vineyard management companies, in addition, ... have substantial ties to the Napa Valley. Each of them has maintained permanent residence in the valley for a significant period of time.... [T]hey recruit only within the Napa Valley itself; they do not travel from state to state or even county to county with a work crew.
 
 
 10
 579 F.Supp. at 272.
 
 
 11
 The plain language of the Act supports the district court's conclusion that such persons are "agricultural employers" within the definition of that term in section 1802(2). While appellees do not "own" the vineyards, they do "operate" them. They have contracted with Heublein to perform all of the operations necessary for the management of vineyards owned or leased by Heublein throughout the yearly cycle of preparation, growth, and harvest. Heublein may choose the grapes to be grown, and appellees must report the progress of the crop to Heublein and clear certain extraordinary decisions with Heublein, but appellants have offered no evidence sufficient to create a real dispute over whether the appellees "operate" the vineyards within the ordinary meaning of that term.
 
 
 12
 Appellants point to the use of the phrase "owned or operated" in section 1803(a)(1), which creates an exemption from the registration requirements for anyone who "engages in a farm labor contracting activity on behalf of a farm ... which is owned or operated exclusively by such individual or an immediate family member of such individual, if such activities are performed only for such operation and exclusively by such individual or an immediate family member." 29 U.S.C. Sec. 1803(a)(1) (emphasis added). Appellants argue that this usage suggests that Congress intended the "agricultural employer" exemption to apply only "to small family operations with a fixed attachment to the farm." But the limited reach of section 1803(a)(1) does not arise from use of the phrase "owned or operated," but from other specific restrictive language of that section. Nothing in either section indicates Congress intended to restrict the meaning of the term "owns or operates" in section 1802(2) to "owns."
 
 III.
 
 13
 The legislative history supports the district court's interpretation of section 1802(2).
 
 
 14
 The purpose of the registration provision in both the present Act and its predecessor (the Farm Labor Contractor Registration Act, 7 U.S.C. Secs. 2041-2053 (repealed 1983) ) was to aid the enforcement of the regulatory provisions against traditional "crew leaders" or "crew pushers" who recruited crews of migrant and seasonal workers and moved them from job to job. Although these "crew leaders" or "crew pushers" were regarded as the primary offenders against migrant and seasonal workers, they were "usually transient, and hard to find ..., and even harder to locate and control." 128 Cong.Rec. S11838-39 (daily ed. Sept. 20, 1982) (statement of Sen. Quayle); see also 128 Cong.Rec. S11738-39 (daily ed. Sept. 17, 1982) (statement of Sen. Hatch). These considerations did not apply to farmers and processors who were permanently located, tied to their farm or processing plant, and thus easily found and held accountable. Id. Yet the predecessor statute had been interpreted and enforced to require farmers, processors and other fixed situs employers of migrant and seasonal workers to register. Congress regarded the application of the registration requirement to such persons as "redundant and unnecessary" and sought to end it by the provision of the new Act exempting "agricultural employers" from registration. Id.; see also H.R.Rep. No. 885, 97th Cong. 2d Sess., reprinted in 1982 U.S.Code Cong. & Ad.News 4547, 4548-50.
 
 
 15
 In light of this purpose and the latitude suggested by the extension of the exemption to those who "operate" farms as well as those who "own" them, the district court properly interpreted the exemption as applicable to such vineyard management companies as appellees. By necessity, by practice, and by contract they are fixed to the vineyards they manage for an entire year. They are as easily found as an owner or lessor--perhaps more so in light of the common occurrence of absentee corporate ownership in this industry. Appellants have pointed to nothing in the legislative history supporting their thesis that Congress intended to limit the exemption to owners contrary to the statutory language.
 
 
 16
 As appellants argue, there are statements in the legislative history indicating Congress intended the registration provision to apply to "middlemen" who supply labor to farmers and processors for a fee. Although the vineyard management companies are compensated by a fee, they do much more than supply labor. Indeed, it is fair to say furnishing the necessary labor is an incidental and relatively minor aspect of the performance of their overall function as operators of vineyards.
 
 
 17
 Appellants' reliance upon cases holding that the registration provision of the predecessor statute applied to persons who supplied labor for compensation, but did not bear the risk of the operation (Marshall v. Silver Creek Packing Co., 615 F.2d 848, 850 (9th Cir.1980) (per curiam) and Marshall v. Green Goddess Avocado Corp., 615 F.2d 851, 853 (9th Cir.1980) ), is misplaced. The question addressed in those cases was whether packing shed operators came within an exemption in the prior statute limited to "any farmer ... who personally engages in any [labor contracting] activity for the purpose of supplying migrant workers solely for his own operation." 7 U.S.C. Sec. 2042(b)(2) (emphasis added). There is no limitation in the exemption of "agricultural employers" in the present Act comparable to the requirement that the employer engage labor "solely for his own operation."
 
 
 18
 In Wage-Hour Opinion No. 522 (April 23, 1984), the Department of Labor interpreted the "agricultural employer" exemption as applying to "grove care contractors" who perform the same functions in the production of fruit as vineyard management companies perform in the production of grapes, and who neither own nor lease the groves. Appellants contend the opinion is wrong. The opinion relies in part upon language in the Senate report accompanying 1974 amendments to the predecessor statute. See S.Rep. No. 1295, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 6441. Appellants argue that although the Senate report may reveal the intent of the 93rd Congress, it is not proper to consider the intent of the 93rd Congress in determining the intent of the 97th Congress which adopted the present Act. See Conference of State Bank Supervisors v. Conover, 710 F.2d 878, 884 (D.C.Cir.1983) (per curiam). We do not regard the Department's opinion as resting so much upon the Committee report of the earlier Congress as upon the long continued practice of the Department based upon its interpretation of the registration provision of the prior statute--a statute intended to be more rather than less extensive in its coverage than the registration provisions of the present Act. See, e.g., 128 Cong.Rec. H7905 (daily ed. Sept. 29, 1982) (statement of Rep. Erlenborn); 128 Cong.Rec. S11739 (daily ed. Sept. 17, 1982) (statement of Sen. Hatch). Opinion No. 522 expressly notes that the earlier Congressional Report simply "accepted the Department's [still earlier] position." In any event, reliance upon Opinion No. 522 is unnecessary. The clear language of the Act and its legislative history convince us that vineyard management companies are included within the "agricultural employer" exemption from the Act's registration requirement.
 
 IV.
 
 19
 The district court declined to consider alleged violations that occurred prior to the effective date of the Act, because violations of the predecessor statute had not been pleaded. Appellants argue the court should have applied a doctrine referred to as the "doctrine of simultaneous repeal and reenactment," and described as follows:
 
 
 20
 Where a statute is repealed by a new statute ... which re-enacts substantially the provisions of the earlier statute, and the repeal and re-enactment occur simultaneously, the provisions of the original statute which are re-enacted in the new statute ... are regarded as having been continuously in force from the date they were originally enacted.
 
 
 21
 73 Am.Jur.2d Statutes Sec. 391 at 509 (1974).
 
 
 22
 The difficulty with the argument is that the present statute is not one that "re-enacts substantially the provisions of the earlier statute." As we have seen, the provision in the present Act critical to the disposition of this case (the "agricultural employer" exemption) is new and was adopted with the specific intention of changing--and narrowing--the application of the earlier statute's registration requirements. See, e.g., 128 Cong.Rec. H7905 and S11739, supra; H.R.Rep. No. 885, supra, reprinted in 1982 U.S.Code Cong. & Ad.News at 4550.
 
 
 23
 Appellants had an absolute right to amend once prior to the service of a responsive pleading, see Worldwide Church of God, Inc. v. California, 623 F.2d 613, 616 (9th Cir.1980) (per curiam), but failed either to file an amended complaint or to accept the court's invitation to file a motion for leave to amend. As late as the day final judgment was entered, appellants' counsel indicated his willingness to file a formal motion to amend and the court indicated its willingness to entertain such a motion, but appellants' counsel took no action. Similarly, appellants have waived their argument based on the federal savings clause, 1 U.S.C. Sec. 109 (1982), by ignoring the district court's invitation to present it in a properly noticed motion.
 
 V.
 
 24
 The district court did not err in setting aside the defaults of the defendants Abreu and Forman. "Absent an abuse of discretion, there is no error in setting aside a default where the judge finds good cause to do so." Curry v. Jensen, 523 F.2d 387, 388 (9th Cir.1975). The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment. See Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981). A decision on a motion to set aside a default is not an abuse of discretion unless the court is "clearly wrong" in its determination of good cause. Provident Security Life Insurance Co. v. Gorsuch, 323 F.2d 839, 842 (9th Cir.1963). " 'Where timely relief is sought from a default ... and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits.' " Schwab v. Bullock's Inc., 508 F.2d 353, 355 (9th Cir.1974) (quoting 7 J. Moore, Moore's Federal Practice p 60.19, at 232-33).
 
 
 25
 The district court found good cause based upon evidence that Abreu and Forman were confused regarding service, the existence of a meritorious defense, and the absence of prejudice to plaintiffs. While the evidence of confusion was less than compelling, in view of the other factors considered by the district court, we cannot say its finding of good cause was "clear error."
 
 
 26
 AFFIRMED.