**Marilyn O'CONNOR; Eleanor "Ellie" Waugh, Plaintiffs–Appellants,**

v.

**STATE OF NEVADA, Frankie Sue Del Papa, Attorney General for the State of Nevada; and Cheryl A. Lau, Secretary of State for the State of Nevada, Defendants–Appellees.**

No. 92–16803.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1994.

Decided June 8, 1994.

As Amended July 1, and July 12, 1994.

candidates for the office of Nevada Supreme Court Justice. They raise several arguments on appeal. We affirm.

## II

## BACKGROUND

On May 7, 1992, O'Connor filed with the Nevada Secretary of State her declaration of candidacy for Justice of the Nevada Supreme Court. She attached to the declaration a statement indicating her non-lawyer status and that she qualified for the office under the provisions of the Nevada Constitution. The Secretary of State refused to accept her declaration.

On May 11, 1992, Waugh also filed a declaration of candidacy for Justice of the Nevada Supreme Court. Apparently, her declaration was inadvertently accepted because on June 8, 1992, the Nevada Attorney General filed an application for writ of mandamus in the Nevada Supreme Court to compel the Secretary of State to strike Waugh's name from the list of declared candidates because Waugh was not a licensed attorney and was therefore not qualified under Nev.Rev.Stat. § 2.020(2). The Nevada Supreme Court granted the writ on June 24, 1992, and Waugh's name was removed from the list of candidates for Supreme Court Justice. On July 14, 1992, O'Connor and Waugh (collectively referred to as "appellants") filed a complaint in the United States District Court for the District of Nevada against the State of Nevada, Frankie Sue Del Papa, the Attorney General, and Cheryl Lau, the Secretary of State (collectively referred to as "the State"), in which they challenged the constitutionality of Nev.Rev.Stat. § 2.020(2). In their complaint, which also contained a request to convene a three-judge panel under 28 U.S.C. § 2284, they alleged that § 2.020(2) violated the First and Fourteenth Amendments of the United States Constitution because it required that candidates for the Justice of the Nevada Supreme Court be licensed attorneys admitted to practice law in

Mark A. Hutchison, Morris Brignone & Pickering, Las Vegas, NV, Kevin J. Worthen, Provo, UT, for plaintiff-appellants.

Kateri Cavin, Deputy Atty. Gen., Carson City, NV, for defendants-appellees.

Before: NOONAN, and T.G. NELSON, Circuit Judges, and DAVID A. EZRA,* District Judge.

Opinion by Judge T.G. NELSON.

T.G. NELSON, Circuit Judge:

## I

## OVERVIEW

Marilyn O'Connor and Eleanor Waugh appeal the district court's judgment in favor of the State of Nevada in their action challenging the constitutionality of Nev.Rev.Stat. § 2.020(2), which requires candidates for the Nevada Supreme Court to be attorneys. Because O'Connor and Waugh are not attorneys, they were not permitted to run as

---

* Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by desig-

nation.

the State of Nevada. They alleged that Del Papa, acting as Attorney General, and Lau, acting as Secretary of State, interfered with their constitutional rights to pursue the public office of Nevada Supreme Court Justice. In their complaint, appellants sought both a declaration that § 2.020(2) was unconstitutional and an injunction directing the State not to enforce the statute.

In addition to the complaint, appellants filed an application for a three-judge court pursuant to 42 U.S.C. § 1973c, a motion to expedite civil proceedings and a motion for disqualification of judges who were members of the Nevada Bar Association under 28 U.S.C. § 455 because, they argued, such judges would not be impartial. The district court denied all three motions on July 30, 1992.

The State's answer was filed on September 30, 1992, but because it was untimely, default was entered on October 2, 1992. The district court denied appellants' motion to strike the answer and granted the State's motion to set aside default on October 15, 1992.[1] On October 23, 1992, the district court ruled that: § 2.020(2) does not violate the United States Constitution; and, *res judicata* and the absence of a federal question barred it from ruling on whether § 2.020(2) violated the Nevada State Constitution. Appellants filed an emergency motion for writ of mandamus in this court on October 26, 1992, requesting that their names be placed on the ballot as candidates for Supreme Court Justice. That motion was denied. Appellants timely appealed the district court's judgment.

## III

## DISCUSSION

### A. *United States Constitution*

#### 1. Equal Protection Clause

■ We must first decide what level of scrutiny to apply in determining whether the ballot access restriction contained in § 2.020(2) violates the Equal Protection Clause. Although states generally have broad power to determine voter qualifications and the manner of elections, such requirements cannot violate the Equal Protection Clause. *Bullock v. Carter,* 405 U.S. 134, 141, 92 S.Ct. 849, 854, 31 L.Ed.2d 92 (1972). Under traditional equal protection principles, classifications survive constitutional scrutiny so long as they bear a rational relationship to a legitimate state interest. *Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). It is only when the challenged statute burdens either a "suspect" class or a "fundamental" constitutional right that we depart from this rational basis level of scrutiny. *Id.* "Far from recognizing candidacy as a 'fundamental right,' [the Supreme Court has] held that the existence of barriers to a candidate's access to the ballot does not of itself compel close scrutiny." *Id.* (internal quotations omitted).

■ Ballot access restrictions which are based upon wealth or economic status must be "closely scrutinized" to determine whether they are reasonably necessary to accomplish a legitimate state objective. *Carter,* 405 U.S. at 144, 92 S.Ct. at 856 (excessive filing fees are unreasonable). Closer scrutiny is required in such cases because "[e]conomic status is not a measure of a prospective candidate's qualifications to hold elective office." *Clements,* 457 U.S. at 964, 102 S.Ct. at 2844. Similarly, the Court has applied heightened scrutiny where ballot access requirements are based upon a candidate's association with a particular political party. *See Williams v. Rhodes,* 393 U.S. 23, 30–34, 89 S.Ct. 5, 10–12, 21 L.Ed.2d 24 (1968) (Access requirements which make it virtually impossible for any but the two major parties to attain ballot access violate not only the Equal Protection Clause, but they implicate First Amendment concerns because they burden the right to associate for the advancement of political beliefs.).

However, "[n]ot all ballot access restrictions require 'heightened' equal protection scrutiny." *Clements,* 457 U.S. at 965–66, 102

---

**1.** Appellants' filed a petition for writ of mandamus in this court on September 23, 1992, in which they sought relief which would allow their names to be placed on the ballot. However, because they failed to file an emergency motion, we did not consider the petition until after the district court had set aside default. Accordingly, we denied the petition.

S.Ct. at 2845. Instead, it is necessary to examine "the nature of the interests that are affected and the extent of the burden those provisions place on candidacy." *Id.* at 965, 967–68, 102 S.Ct. at 2844, 2846 (applied rational basis standard to statute that imposed waiting period for candidacy and concluded that statute did not violate the Equal Protection Clause).

■ Because the outcome of this case does not turn on the level of review required, we will assume, without deciding, that § 2.020(2) must be "closely scrutinized" to determine whether it is reasonably necessary to accomplish a legitimate state objective. *See Carter,* 405 U.S. at 144, 92 S.Ct. at 856. We hold that § 2.020(2) survives such scrutiny. "The equal protection clause does not prohibit the legislature from adopting a more rigorous policy for assuring excellence in the judiciary than for other elective offices." *Trafelet v. Thompson,* 594 F.2d 623, 627 (7th Cir.) (statute requiring mandatory retirement for judges at age seventy does not violate Equal Protection Clause), *cert. denied,* 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979); *see also Bullock v. Minnesota,* 611 F.2d 258, 260 (8th Cir.1979). Confronted with a statutory challenge similar to the one we face in the present case, the Eighth Circuit held that "[t]he requirement that candidates be eligible to practice law in Minnesota clearly advances the state's compelling need to obtain candidates [for the office of Minnesota Supreme Court Justice] who are qualified to understand and deal with the complexities of the law."[2] *Bullock,* 611 F.2d at 260.

The requirement in § 2.020(2) that Supreme Court Justice candidates be attorneys is reasonably necessary to achieve several legitimate State interests. It maintains high standards of conduct in the administration of justice and guarantees that the State's justices will have the legal knowledge necessary to understand and apply the law. Furthermore, once an attorney is admitted to practice law, he or she is subject to continuing legal education requirements, to the rules of ethical conduct and to disciplinary proceed-

ings, if justified. The State's legitimate interest in ensuring excellence in its judiciary outweighs any burden the attorney requirement has either on appellants' rights or on the voters' rights to choose their candidates. Finally, § 2.020(2) "discriminates neither on the basis of political affiliation nor on any factor *not* related to a candidate's *qualifications* to hold political office." *Clements,* 457 U.S. at 967, 102 S.Ct. at 2845 (emphasis added). Rather, the requirement that a candidate for Nevada Supreme Court Justice be an attorney, licensed and admitted to practice law in Nevada, is indeed based upon a candidate's qualifications for the office.

■ Appellants also contend that the attorney requirement is essentially a filing fee because it requires that candidates not only be members of the bar association but that they pay bar dues. We disagree. The Supreme Court has held that a state may constitutionally condition the right of its attorneys to practice law upon the payment of membership dues to an integrated bar. *See Lathrop v. Donohue,* 367 U.S. 820, 843, 81 S.Ct. 1826, 1838, 6 L.Ed.2d 1191 (1961); *see also Keller v. State Bar of California,* 496 U.S. 1, 4, 110 S.Ct. 2228, 2231, 110 L.Ed.2d 1 (1990). "[L]awyers admitted to practice in the State may be required to join and pay dues to the State Bar...." *Keller,* 496 U.S. at 4, 110 S.Ct. at 2231. Specifically, *Keller* held that a state bar may constitutionally fund activities germane to regulating the legal profession and improving the quality of legal services; but, mandatory bar dues may not fund activities of an ideological nature that fall outside the former category. *Id.* at 13–14, 110 S.Ct. at 2235.

The payment of bar dues is a precondition to the practice of law which the State may constitutionally impose upon its attorney members. The State is not requiring the payment of bar dues as a prerequisite to candidacy. Rather, it is the legal knowledge that comes with being an attorney that the State requires as a precondition to candidacy. The fact that an attorney must also pay bar dues is a necessary corollary to the practice

---

**2.** In *Bullock,* the Eighth Circuit declined to decide which level of scrutiny applied to the statute at issue because it concluded that the provision withstood constitutional scrutiny under both rational basis and strict scrutiny standards.

of law. However, it does not follow that the payment can then be characterized as a "filing fee" which thereby burdens ballot access. Therefore, because the State may constitutionally require its attorneys to pay bar dues as a prerequisite to practicing law, we conclude that the payment of bar dues does not constitute a "filing fee" that renders the attorney requirement unconstitutional. *See Bullock* 405 U.S. at 144–47, 149, 92 S.Ct. at 856–58, 859 (excessive filing fees violate Equal Protection Clause). Although a filing fee *alone* may be insufficient to withstand a constitutional challenge, *see Clements,* 457 U.S. at 964, 102 S.Ct. at 2843, the attorney requirement in this case is based upon a candidate's qualifications to hold office. *See id.* at 967, 102 S.Ct. at 2845. Thus, unlike filing fees, any burden the attorney requirement may have on ballot access is justified.

### 2. First Amendment

Appellants next argue that requiring membership in the State Bar as a prerequisite to candidacy violates their First Amendment rights because it interferes with their right to be free of coerced associations. "Appellants are not complaining because they cannot be accepted as members, but because they do not want to be forced to do so."

■ It is true that when a state thwarts the ability of voters to express their own political preferences by limiting the access of new parties to the ballot, the restriction must be narrowly drawn to serve a compelling state interest. *Norman v. Reed,* — U.S. —, —, 112 S.Ct. 698, 705, 116 L.Ed.2d 711, 723 (1992). Although the exclusion of candidates burdens a voter's freedom of association, a State's "important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson v. Celebrezze,* 460 U.S. 780, 787–88, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983) (footnote omitted).

■ As we concluded above, § 2.020(2) satisfies heightened scrutiny. The State has important regulatory interests in maintaining

a competent judiciary that justify its restrictions on ballot access for Supreme Court Justice candidates. Accordingly, the attorney requirement does not violate the First Amendment. *See Clements,* 457 U.S. at 971, 102 S.Ct. at 2847 (upholding restrictions on candidate eligibility that serve legitimate state goals unrelated to First Amendment values).

After considering the character and magnitude of the injury asserted; the interests of the State in maintaining a qualified judiciary; and the extent to which those interests burden appellants' rights, *see Celebrezze,* 460 U.S. at 789, 103 S.Ct. at 1570, we conclude that § 2.020(2) survives heightened scrutiny and violates neither the Equal Protection Clause nor the First Amendment.

### B. Nevada State Constitution

Appellants also argue that § 2.020(2) violates the Nevada State Constitution. However, we need not resolve this issue. When the district court dismissed this case, it ruled that it was barred from rendering judgment on the state law issue on two grounds—the absence of a federal question and the doctrine of *res judicata.*[3] We construe the district court's finding that the absence of a federal question barred its consideration of the state law claim as an exercise of its discretion to decline to hear a pendent state law claim.

■ We review the district court's decision whether to exercise pendent jurisdiction for an abuse of discretion. *See Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1309 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993). "[D]istrict courts are given broad discretion in evaluating whether pendent jurisdiction is appropriate." *Medrano v. City of Los Angeles,* 973 F.2d 1499, 1506 (9th Cir.1992) (quotations and citation omitted), *cert. denied,* — U.S. —, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993).

■ Section 1367(c) provides that "district courts may decline to exercise supplemental

---

**3.** Because we affirm on the former ground, i.e., absence of a federal question, we do not reach the *res judicata* issue.

jurisdiction over a claim" if any one of the four circumstances listed in the statute exist. 28 U.S.C. § 1367(c). We have held that [o]nce [such a circumstance] is identified, the exercise of discretion ... is informed by whether [declining jurisdiction] comports with the underlying objective of 'most sensibly accomodat[ing] [sic]' the values of 'economy, convenience, fairness, and comity.'" *Executive Software v. United States Dist. Ct.*, 24 F.3d 1545, 1557 (9th Cir. 1994) (citing *Imagineering*, 976 F.2d at 1309 (internal citations omitted)).

We find two of those circumstances to exist in the present case: "(1) the claim raises a novel or complex issue of State law ... [and] (3) the district court has dismissed all claims over which it ha[d] original jurisdiction." 28 U.S.C. § 1367(c)(1), (3). First, the difficult question of Nevada constitutional law presented is the very sort of "novel" issue that usually will justify declining jurisdiction over the claim. *See Medrano*, 973 F.2d at 1506 (district court did not abuse its discretion in dismissing pendent state claims "so that it would not be called upon to resolve difficult questions of [state] law" (internal quotations and brackets omitted)). Second, the district court properly dismissed all claims over which it had original jurisdiction. We previously stated that "in the usual case in which federal-law claims are eliminated before trial, the balance of [the factors of economy, convenience, fairness, and comity] will point toward declining to exercise jurisdiction over the remaining state-law claims." *Imagineering*, 976 F.2d at 1309 (internal quotations omitted). Finally, there are no countervailing circumstances that require the conclusion that retaining jurisdiction will "most sensibly accomodat[e] [sic]" these factors. *Executive Software*, 24 F.3d at 1557 (internal quotations omitted). Accordingly, we conclude that the district court did not abuse its discretion in declining to consider the state constitutional law claim.

## C. *Three–Judge Court*

■ We reject appellants' contention that the district court erred when it denied their

motion to convene a three-judge court to hear this case.[4] In their complaint, appellants requested that a three-judge panel be convened under 28 U.S.C. § 2284. Section 2284 requires a three-judge district court to be convened either when required by an Act of Congress, or "when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." The latter prerequisite has not been met in this case as appellants are not making an apportionment challenge.

■ With regard to the first element, appellants argue that 42 U.S.C. § 1973c is an Act of Congress which required the district court to convene a three-judge panel. However, § 1973c requires certain state or political subdivisions to obtain preclearance for laws passed after November 1, 1964, which have the purpose or effect of "denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2) [42 U.S.C. § 1973b(f)(2), pertaining to members of a language minority group]." *See* 42 U.S.C. § 1973c. Because the statute at issue does not have the purpose or effect of denying the right to vote on account of race, color or other language minority group, § 1973c and the three-judge court requirement contained therein are inapplicable to this case. Moreover, Nevada is not listed within the jurisdictions covered by the preclearance requirement. *See* 28 C.F.R. Part 51, Appendix. Accordingly, the district court did not err in denying their motion to convene a three-judge court.

## D. *Recusal*

Appellants also contend that the district court judge erred in refusing to recuse himself from the case in accordance with 28 U.S.C. § 455. Section 455(a) requires a judge to disqualify himself or herself "in any proceeding in which his [or her] impartiality might reasonably be questioned." The standard for recusal under § 455 is "whether a

---

4. We note that when appellants filed their complaint, they requested a three-judge panel under 28 U.S.C. § 2284. A few days later, they filed an application for a three-judge panel pursuant to 42 U.S.C. § 1973c.

reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986) (internal quotations omitted).

■ Appellants argue that the district court judge should have disqualified himself because he, as well as other judges who are members of the Nevada Bar Association, have a vested interest in the outcome of this case which challenges the requirement that Supreme Court Justices be licensed bar members. We disagree. A reasonable person would not conclude that the *federal* district court judge's impartiality might reasonably be questioned in a case challenging the qualifications of *state* court justices. Furthermore, membership in a state bar is not a prerequisite to being a federal judge. Therefore, we affirm the district court judge's refusal to disqualify himself.

### E. *Entry of Default*

Appellants next argue that the district court erred in denying their motion to strike the State's tardy answer and granting the State's motion to set aside the entry of default. This argument lacks merit.

■ We note that no default judgment was entered. Instead, the clerk entered default and the State moved to set aside the entry of default. Fed.R.Civ.P. 55(c) provides that the district court may set aside an entry of default for good cause. We review the district court's decision on a motion to set aside entry of default for an abuse of discretion. *Mendoza v. Wight Vineyard Management,* 783 F.2d 941, 945 (9th Cir. 1986). "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Id.* In addition, we will not find that the district court's decision on a motion to set aside default is an abuse of discretion unless it was "clearly wrong" in its determination of good cause. *Id.* "Where timely relief is sought from a default ... and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Id.* at 945–46 (internal quotations and brackets omitted).

Further, in determining whether to set aside a default judgment under Fed.R.Civ.P. 60(b), the district court should consider whether: (1) the plaintiff would be prejudiced by setting aside the default; (2) the defendant has a meritorious defense; and, (3) the defendant's culpable conduct led to the default. *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984).

■ In the present case, the district court's decision to set aside the entry of default was not clearly wrong. First, it found that the plaintiffs suffered no prejudice. Second, as demonstrated above, the State had a meritorious defense to Appellants' constitutional challenge. Finally, the State sought timely relief. The district court found that the State acted under a good faith, albeit misguided, belief that the answer filed was timely, and thus the State was not culpable. Therefore, the district court properly resolved all doubt in favor of setting aside the entry of default and deciding the case on its merits. *See Pena v. Seguros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985) ("default judgments are generally disfavored").

### F. *Injunction*

■ Finally, contrary to appellants' request, we decline to issue an injunction directing the state to invalidate the election and to conduct a special election. When a reviewing court finds that an election violates the Equal Protection Clause, it may order the state to set aside that election and/or require a new election. *See Hadnott v. Amos,* 394 U.S. 358, 364–67, 89 S.Ct. 1101, 1104–06, 22 L.Ed.2d 336 (1969). However, because § 2.020(2) does not violate the United States Constitution, we need not direct Nevada either to set aside the election at issue here or to hold a special election.

AFFIRMED.