Salvador **MENDOZA**, et al., Plaintiffs,

v.

**WIGHT VINEYARD MANAGEMENT,**
et al., Defendants.

No. C–83–2697 EFL.

United States District Court,
N.D. California.

Feb. 7, 1984.

---

Lydia A. Gonzalez, Cal. Rural Legal Assistance, Salinas, Cal., Richard S. Kohn, San Francisco, Cal., for plaintiff.

Michael Adelman, Berman, Cassel & Carter, Daniel T. Berkley, Pechner, Dorfman, Wolffe, Rounick & Cabot, San Francisco, Cal., for defendant.

## OPINION GRANTING MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

LYNCH, District Judge.

This action was brought by three farm workers individually and on behalf of all others similarly situated against three vineyard management companies, their principals and United Vintners (now Heublein Wines), the owner[1] of the vineyards involved in this suit. The action alleges violations of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801, *et seq.* ("the Act") in that the vineyard management companies did not register as farm labor contractors in violation of section 101 (29 U.S.C. § 1811) and that Heublein Wines employed the unregistered companies in violation of section 402 (29 U.S.C. § 1842) of the Act. The private civil right of action for "aggrieved parties" set forth in 29 U.S.C. section 1854 permits an award of either actual damages or statutory damages of $500 per plaintiff. Class action damages are limited to the lesser of $500 per plaintiff or $500,000. 29 U.S.C. § 1854(c).

A hearing was held on Defendant Wight, Wight Vineyard Management, J. Alex Vyborny and Heublein Wines' motions to dismiss and for summary judgment on August 26, 1983.[2] Defendant Cairns and K.S. Cairns Co. joined in the motion to dismiss and for summary judgment on September 19, 1983. A continued hearing was held on October 21, 1983. Post-hearing briefs were filed by both sides following a request by plaintiffs' counsel for additional briefing. This Court's order granting defendants' motion to dismiss and/or for summary judgment[3] was filed on December 20, 1983. This opinion contains the Court's reasoning in arriving at its decision granting defendants' motions.

This Court is empowered to grant summary judgment[4] if the papers on file with

1. Heublein is the owner of one of the vineyards and leases the other two.

2. Defendant Wight and Wight Vineyard Management moved to dismiss the complaint on June 17, 1983. It is unclear whether defendant Cairns joined in the motion at that time. The parties attempted improperly to continue the hearing on the motion to dismiss and the matter was set on the dismissal calendar since the plaintiff did not appear on the noticed motion day. Defendant Heublein Wines moved to dismiss and for summary judgment on July 18, 1983. Defendants Wight Vineyard Management, Douglas Wight and J. Alex Vyborny renoticed their motion to dismiss on July 22, 1983. The motions were recalendared and heard on August 26, 1983.

3. A default was entered by the clerk of the Court on October 28, 1983 against defendants Richard Forman and David Abreu dba David Abreu Vineyard Management. Plaintiffs have not yet moved for a default judgment.

4. Since matters outside the pleadings, including affidavits and documentary exhibits, were con-

the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## STANDING

█ This Court gave its tentative ruling on August 26, 1983 that plaintiffs do have standing under 29 U.S.C. section 1801, *et seq.* This Court hereby adopts this tentative ruling as its final determination with respect to standing. For the record, this decision is supported by *Alvarez v. Longboy,* 697 F.2d 1333 (9th Cir.1983), which this Court finds controlling; *cf. Davis Forestry Corp. v. Smith,* 707 F.2d 1325 (11th Cir. 1983) (competitor of alleged farm labor contractor has *no* standing under the private cause of action provision of the Act). The Act and its predecessor legislation, the Farm Labor Contractors Registration Act (FLCRA), 7 U.S.C. § 2041, *et seq.* (simultaneously repealed upon enactment of the Act) were intended to remedy abuses by irresponsible farm labor contractors and to alleviate the appalling conditions under which many migrant and seasonal workers are compelled to live and work. See 7 U.S.C. § 2041; 1964 U.S.Code Cong. & Ad. News 3690; 29 U.S.C. § 1801; H.R.Rep. No. 885, 97th Cong., 2d Sess. 1–3 *reprinted in* 1982 U.S.Code Cong. & Ad.News 4547–4549. The action before this Court is for statutory and compensatory damages allegedly suffered as a result of a violation of the registration provisions of the Act. Since the plaintiffs fall within the group of persons who are protected under the Act, we find that they have standing to sue under the Act. *Alvarez,* 697 F.2d at 1336–38.

## EXEMPTION UNDER THE ACT

█ 29 U.S.C. section 1803(b) states that "Subchapter I of this chapter [registration] does not apply to any agricultural employer or agricultural association or to any employee of such an employer or association." [5] Plaintiffs concede that it is the status of the vineyard management entities which is the crux of this matter. Defendant Heublein Wines' potential liability is based on hiring allegedly unregistered farm labor contractors. If the vineyard management companies are in fact agricultural employers neither they nor Heublein Wines are liable under this suit for violation of the Act. Similarly, if the vineyard management entities *do not* qualify for the agricultural employer exemption, all the defendants are liable under this complaint.

29 U.S.C. section 1802(2) states as follows:

> The term "agricultural employer" means any person *who owns or operates* a farm, ranch, processing establishment, cannery, gin packing shed or nursery, or who produces or conditions seed and who either recruits, solicits, hires, employs, furnishes or transports any migrant or seasonal agricultural worker. (Emphasis added.)

The crucial language of the exemption is contained in the words "owns or operates." The statute is, however, silent as to any definition of these words. No definition of the terms is provided by the legislative history. No case decided under the statute either defines the words "owns or operates" or attempts to explicate the parameters of the agricultural employer exemption.

Plaintiffs urged at hearing and in their briefs that the agricultural employer exemption was intended to be reserved for

---

sidered by the Court, this motion is treated as a motion for summary judgment. Fed.R.Civ.P. 56.

**5.** This Court wishes to emphasize that exemption from the registration requirements of the Act *does not* carry with it exemption from the substantive protective provisions of the Act concerning, *e.g.,* housing, working conditions and

transportation. The legislative history particularly notes the applicability of the protective provisions to *all* employers of migrant and/or seasonal workers. H.R.Rep. No. 885, 97th Cong., 2d Sess. 12, *reprinted in* 1982 U.S.Code Cong. & Ad.News 4547, 4558. This Court notes in passing that the only violations of the Act alleged in any of the papers herein are violations of the registration requirements.

owners or lessors of land or for those who bear the risk of profit and loss from activities on the land.[6]  Plaintiffs argue further that the vineyard management companies act as middlemen between the migrant or seasonal workers and the ultimate owners of the vineyards which are being worked and thus are *per se* farm labor contractors. Such a conclusion might follow if we were to assume (1) that case law decided under the predecessor statute (which did not contain an exemption for agricultural employers) was applicable and (2) that the earlier case law did in fact establish that middlemen are by definition farm labor contractors.  However, neither of these assumptions is correct.

Although the legislative history does contain some references to farm labor contractors as middlemen, no such references are contained in the statute itself.  Furthermore, even as plaintiffs argue, the distinction between farm labor contractors and agricultural employers is based in part at least on a consideration of the "permanency of their operation and ... their mode of doing business."  H.R.Rep. No. 885, 97th Cong., 2d Sess. 12 *reprinted in* 1982 U.S. Code Cong. & Ad.News 4547, 4558;  see also citation by plaintiffs in *Transcript,* August 26, 1983 at 13:14–17.  Other legislative history references note the applicability of the exemption to "fixed situs" employers.

> The Migrant and Seasonal Agricultural Worker Protection Act represents a significant departure from current law. However, FLCRA has been subject to many legal challenges and *much litigation has arisen over the interpretation of who must register as a farm labor contractor.*  In my work as chairman of the Employment and Productivity Subcommittee, which has jurisdiction over FLCRA, I have learned that *those problems have been particularly difficult with regard to fixed situs employers such as farmers*, whose status has been subject to continuous litigation.  Endless

legal issues have greatly hindered effective administration of the act and I feel that the proposed bill will help to remedy that problem.

> The Proposed bill makes several fundamental changes from current law.  These changes are needed attempts to deal with the problems that have arisen under FLCRA and relate specifically to those difficulties.  *The first difference between this bill and current law is that it distinguishes between the traditional farm labor contractor and the fixed situs agricultural employer by eliminating the requirement for agricultural employers to register as farm labor contractors.*  This change eliminates an extremely burdensome and unnecessary requirement for agricultural employers. There is good reason why the customary agricultural employer should not be required to register under the act.  *Basic differences distinguish the traditional "crew pusher" from the farmer.  By definition, crew leaders are usually transient and hard to find.*  They will often recruit a crew in Louisiana or Texas or some other State and transport their crew to work elsewhere.  Traditional crew leaders are hard to find, and *even harder to locate and control.  Farmers and processors, on the other hand, are quite easy to find.  They are permanently located and are tied to their farm, processing plant, or other property.*  If it appears that they are abusing migrant workers, they can easily be held accountable under the many laws that protect migrant and seasonal farmworkers.  *Indeed, registration requirement [sic] for fixed situs employers are redundant and unnecessary.*  (Emphasis added.)

128 Cong.Rec. S11838–39 (daily ed. Sept. 20, 1982) (statement of Sen. Quale).  Nowhere in the statute, however, is the exemption *limited* to fixed situs employers or farmers who own or lease the land on which they farm.

---

**6.**  Thus, by plaintiffs' own argument defendant Heublein is an agricultural employer under the

Act and is not subject to its registration requirements.

Both the affidavits [7] filed by the defendants and the defendants' depositions offered by the plaintiffs support the defendants' contention that the vineyard management companies are agricultural employers under the Act. The vineyard management companies, of course, do not own the vineyards they manage. The vineyard management companies, however, can be said to "operate" [8] the vineyards in which they work. To interpret the word "operate" by giving it any meaning other than its plain meaning of "to manage" would wreak havoc with sense and the statute as well.

The vineyard management companies herein hold contracts under which they are responsible for performing "all acts and services which may be necessary or desirable in order to farm and manage the vineyards in a good and farmerlike manner and in accordance with the best viticultural practices being employed from time to time in the Napa Valley." See Vineyard Management Contracts, Section 1.2. Such duties include such varied activities as budding, irrigation, tilling, discing, weed control, thinning, training, pruning, tying, replanting, and repair of trellises; applying fertilizers, pesticides, frost protection; removing and replacing diseased vines, harvesting, furnishing all labor and equipment. *Id.*

Thus, under the contracts, the companies do much more than merely supply labor to Heublein. The vineyard management companies, in addition, exhibit many of the characteristics which the legislative history notes distinguish those who would qualify for the agricultural employer exemption. For example, the affidavits submitted by the individual defendants reveal that they have substantial ties to the Napa Valley.

Each of them has maintained permanent residence in the valley for a significant period of time. Defendants' offices may be in their homes, but that fact in itself does not transform the defendants into "transient crew pushers." Mr. Wright and Mr. Cairns' affidavits [9] also show that they recruit only within the Napa Valley itself; they do not travel from state to state or even county to county with a work crew. Furthermore, the fact that the individual vineyard management company officials also work in the fields with their employees would not disqualify them as agricultural employers. The one group of agricultural workers which plaintiffs would agree qualify for the agricultural employer exemption, farmers, also work in the fields alongside their employees. Most telling of all, however, is the lack of evidence in counter-affidavits supplied by the plaintiffs. Plaintiffs do not, on the whole, refute the foregoing facts about the defendants; they state simply that all the facts do not an exemption make in light of the fact that defendants do not own or lease the vineyards covered by the management contract. Thus the question is truly a matter of law; the issue is the interpretation of the statutory language, and summary judgment for the defendants, therefore, is properly granted.

IT IS SO ORDERED.

---

**7.** Plaintiffs filed a motion to strike certain portions of defendants' supplemental affidavits. Even striking the language which is the subject of plaintiffs' objections, the Court finds the affidavits adequate to demonstrate that defendants are not farm labor contractors under the Act.

**8.** One dictionary defines "operate" as "to work, perform or function, as a machine does ... to put or keep in operation: *He operates a ranch.*" *The Random House College Dictionary,* Revised Edition (New York 1982). Defendants' post hearing brief contains the Webster's Dictionary of the English Language (1977) definitions including "to set or keep in operation or in activity; to superintend; to manage; to direct the affairs of."

**9.** Mr. Vyborny's affidavit reveals that his connection to Wight Vineyard Management is advisory only; Mr. Wight has more direct responsibility for its operations.