SIX (6) MEXICAN WORKERS, et al., Plaintiffs,

v.

ARIZONA CITRUS GROWERS, et al., Defendants.

No. CIV 77–329 PHX–CAM.

United States District Court, D. Arizona.

July 11, 1986.

Garry B. Bryant, Davis Segal & Gugino, Tucson, Ariz., for plaintiffs.

Gary M. Sundberg, Sundberg & Mousel, Phoenix, Ariz., Thomas N. Crowe, Hiner Crowe & Scott, Phoenix, Ariz., for defendants Ariz. Citrus Growers Inc., Tyler, Raymond, Busey, Whitworth, Sharp, Fletcher, Ralph, Fletcher Farms.

Robert J. Deeny, Thomas J. Kennedy, Snell & Wilmer, Phoenix, Ariz., for defendant Busey.

## ORDER

MUECKE, District Judge.

Having received and considered Plaintiffs' Motion Concerning Distribution of Relief to Class Members, filed March 25, 1986, Defendants' Memorandum Concerning Appropriate Methods for Distributing Relief to Class Members, filed March 24, 1986, Plaintiffs' Reply Memorandum Concerning Distribution of Relief to Class Members, filed May 9, 1986, Defendants' Reply Memorandum Concerning Appropriate Methods for Distributing Relief to Class Members, filed May 9, 1986, this Court finds and concludes as follows:

The Farm Labor Contractor Registration Act ("FLCRA"), 7 U.S.C. § 2041, *et seq.*, was "intended to remedy abuses by irresponsible farm labor contractors and to alleviate the appalling conditions under which many migrant and seasonal workers are compelled to live and work." *Mendoza v. Wright Vineyard Management,* 579 F.Supp. 268, 270 (N.D.Cal.1984), *aff'd* 783 F.2d 941 (9th Cir.1986). After a bench trial involving the plaintiffs' claims that the Arizona Citrus Growers, a citrus cooperative, and other defendants violated the FLCRA during the 1976–1977 "season", this Court issued its findings of fact and conclusions of law. In that Order, filed September 6, 1985, this Court set out the specific statutory violations each defendant was found liable for and the specific amount of statu-

tory damages pursuant to 7 U.S.C. § 2050a(b) attributable to each violation. Subsequent to the Order this Court has been guided by the following principle set out in 7A C. Wright & A. Miller, Federal Practice and Procedure § 1784 (1972), at 119; in class action suits "courts must use their discretion, and in many cases their ingenuity, to shape decrees or to develop procedures for ascertaining damages and distributing relief that will be fair to the parties but will not involve them in an unduly burdensome administration of the award."

In an Order filed January 16, 1986, this Court established a procedure to be followed by the parties in identifying the class members and in determining the violations committed against each defendant based upon the best available evidence. In addition the Order set out the burdens of proof to be borne by the respective parties in these identifications and determinations. Once the parties have properly complied with this Court's January 16, 1986 Order and this Court makes the relevant determinations, the Court will have a reasonably accurate listing of both the identity of the members of the class and of what violation(s), if any, each defendant committed against each individual class member.

## I. The Methods and Procedures to be Followed in Distributing the Statutory Damages to the Class Members Who Can Be Reasonably Located

### A. Notice to Class Members

Identified class members need to be informed of their right to recover their individual statutory damage awards. In order to provide the best notice practicable under the circumstances, both parties have proposed that basically the same methods used in connection with the initial class notice be used. That approach, as summarized in the plaintiffs' motion concerning distribution of relief to class members at p. 2, includes:

the mailing of notices to individual Plaintiffs for whom actual home addresses have been obtained; publishing such notices in newspapers both in Maricopa County and in the states in Mexico where the Plaintiff class members are known to reside; and finally the use of limited radio announcements throughout Maricopa County, Arizona and the various states in Mexico where the plaintiffs reside.

An additional method used by the parties was to post notice in identified locations. *See* defendants' memorandum concerning appropriate methods for distributing relief to class members at p. 5.

■ The parties suggestions regarding notice appear to be appropriate. The parties are directed to attempt to work a joint proposed detailed procedure regarding notice (covering who, when, where, and the content of the notice) to be filed within sixty days from the date of this Order.

### B. Submission of Proof of Claim and Claim Verification

In their memorandum concerning appropriate methods for distributing relief to class members at pp. 5–6, the defendants propose that each claimant should submit a proof of claim which not only identifies the claimant by name, but would also include the following:

all names which [the claimant] may have used while in the employ of defendants, the date or dates of employment, an identification of the particular groves on which the claimant worked (Bodine, Fletcher, others), the claimant's immigration status during the time in question (the period of time during which the claimant was "undocumented" and, therefore, within the class), the claimant's nationality, whether the claimant was housed and/or transported by defendants, whether the claimant received notification of the pendency of the class action, and a signature of the claimant under circumstances that will help guarantee its trustworthiness. Inasmuch as the defendants have maintained signature cards for all workers, the identification of claimants will be facilitated by the comparison of signatures.

The defendants further propose that once these forms are submitted, claim verification could proceed by comparing "the data provided by the claimant with the defendants' records, including time cards, signature cards, and payroll sheets." *Id.* at p. 6.

■ The defendants' suggestions regarding proof of claim places a tremendous burden upon the claimants to remember very specific information (e.g. what were their dates of employment, what particular groves did they work on, who transported them) going back nearly a decade to the 1976–1977 harvest season. Such a tremendous burden would permit the "wrongdoer to profit by his wrongdoing at the expense of the victim." *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652, *reh'g denied* 327 U.S. 817, 66 S.Ct. 815, 90 L.Ed. 1040 (1946). In enacting the FLCRA Congress permitted courts to award actual damages or statutory damages in recognition of the fact that migrant farmworkers may have difficulty proving damages. *Rivera v. Anaya,* 726 F.2d 564, 569 (9th Cir.1984). Inadequate record keeping makes it even more difficult to prove damages. The defendant employers kept inadequate records in violation of statutory requirements. *See* this Court's Order (Findings of Fact and Conclusions of Law) at pp. 15–16, filed September 6, 1985. This Court found that this violation was intentional within the meaning of the act. *Id.* at p. 16. Because of this inadequate record keeping, this Court, in an Order filed January 16, 1986, shifted the burden of proof in regards to the violations committed by each defendant after the plaintiffs met their burden of identifying what plaintiffs worked for which particular defendant during the relevant time period. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–688, 66 S.Ct. 1187, 90 L.Ed. 1515, *reh'g denied* 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946). *See also Brock v. Seto,* 790 F.2d 1446 (9th Cir.1986). In addition the January 16, 1986 Order at p. 2 held that individual statutory damages may be distributed to class members on the basis of the defendants' records, *see Sam-*

*uel v. University of Pittsburgh,* 538 F.2d 991 (3rd Cir.1976) *aff'd on other grounds sub nom Deposit Guaranty Natl. Bank,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), since, despite the inadequate record keeping, the defendants' records appear to be the best evidence available.

In effect the defendants' procedure will allow the defendants to relitigate the issues of what plaintiffs worked for what defendant during the relevant time period and what statutory violations were committed against the claimant by the various defendants. Presently the parties are participating in a painstaking procedure detailed in this Court's January 16, 1986 Order and further particularized in the parties' stipulations regarding class identification adopted in full by this Court on February 12, 1986, a procedure which may take up to seven months according to the deadlines stipulated by the parties. These Orders are the law of the case, *see* 1B J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice § .404 (2d ed. 1984), for the procedures and burden of proof for determining the identity of each class members and the violations which each defendant committed against each class member.

After these determinations are made and the best notice possible is given to the class members, the tasks which remain include finding the individual class members, taking reasonable measures to ensure that the claimant is actually the particular class member he or she says he or she is, and actual distribution of their statutory monetary damages. (An additional remaining task, discussed below, involves the use of unclaimed individual monetary damages.)

In their motion concerning distribution of relief to class members at pp. 2–3, the plaintiffs admit that there may exist some problems of verifying the identity of individual class members who seek to recover their damages:

It is quite common for [M]exican nationals to have no readily available authenticated form of identification. Not infrequently old church bibles form an accu-

rate basis for determining a poor rural [M]exican's identity as any other method available. Birth certificates are not common in certain areas in Mexico.

■ A verification procedure needs to be tailored to this particular situation. Certain of the defendants' suggestions discussed above, such as the defendants' suggestion of comparing the claimant's signature with any signature cards maintained by the various defendants, may be helpful in verifying that the claimants are who they say they are. In their motion concerning distribution of class relief to class members at p. 3, the plaintiffs suggest "a small committee of workers who had been employed during the relevant period and for a substantial amount of time to be assembled who would be able to visually recognize and verify the identity of any potential class members whose identity may be in dispute." In their reply memorandum concerning distribution of relief to class members at p. 5, the plaintiffs add that "[i]f the Defendants would like to include in that committee foremen or others who would be familiar with the individuals who worked during the relevant period, that would be entirely acceptable." The plaintiffs' proposal appears to be a variation upon the method of processing proof of claims by a committee of counsel or a master appointed by the court. By appointing a committee of counsel or a master, according to 2 H. Newberg, Newberg on Class Actions § 10.-12 at p. 368 (2d ed. 1985) [hereinafter cited as Newberg on Class Actions], "[t]he drain on judicial resources is thus reduced, and the processing of claims may be simplified because a lesser standard of proof may be applied without jeopardizing the defendant's due process rights, the defendant having been given full opportunity to challenge damages on a class basis at the trial" and, in the case at bar, statutory damages on an individual basis in post trial motions. *See* this Court's Order filed February 12, 1986. However the defendants correctly point out that it is incumbent upon the plaintiffs to provide more particulars of their plan.

## C. *Distribution*

In their motion concerning the distribution of relief to class members at p. 3, the plaintiffs propose that the team of employees (and possibly foremen) directly distribute the money damages in Mexico after making the necessary identification verifications. However 2 Newberg on Class Actions § 10.12 at p. 370 recommends a different approach:

> Naturally, when the circumstances call for verification, damages will be paid only after such verification, and, though it may sometimes be possible to pay out individual damage awards as the claims are approved, the best approach is to wait until the cut-off date has passed to compute and deduct the costs of litigation and administration of the damage fund, plus attorneys' fees when they are to be paid out of the recovery, and then to determine whether the claims can be paid in full or whether pro-rata distribution is necessary.

In their memorandum concerning appropriate methods for distributing relief to class members at p. 6–7, the defendants basically request the procedure recommended by Newberg on Class Actions. The defendants suggest that when the individual claimant asserts his or her claim, the claimant can provide an address to which a check may be mailed or otherwise distributed.

■ The plaintiffs' suggestion simply did not take into account the possible need to compute and deduct the costs of litigation and/or attorneys' fees from the statutory damage fund (if this Court decides that these costs or fees are warranted and the costs or fees should come from the damages fund). In addition the plaintiffs' suggestion does not discuss a cut off date for the assertion of claims. This Court directs the parties to attempt to work out a detailed joint proposal for distributing the money damages in accord with this Court's discussion of the issue.

## II. *Costs of Notice and Distribution*

In their motion concerning distribution of relief to class members at pp. 4–5 the plaintiffs request that the defendants bear the cost of notice and distribution of the relief to the individual plaintiff class members. The plaintiffs insist that "[s]ince it is the Defendants who have failed in their duty to keep accurate home addresses, which if done would have rendered the distribution process a relatively simple one, it seems only fitting that they should be the ones to bear the cost rather than this burden being placed upon the Plaintiffs." *Id.*

Rather than disputing this assertion, the defendants, in their reply memorandum concerning appropriate methods for distributing relief to class members at p. 5, assert that almost all cases concerning the distribution of relief have been reported in situations involving a settlement. The defendants acknowledge that "once the determination of liability has been made, the Court may direct that the costs of notification and distribution be paid from the funds which defendants may ultimately be required to pay." *Id.* If this Court directed that these costs are to be paid from the statutory damages awarded pursuant to 7 U.S.C. § 2050a(b), the plaintiffs essentially would be bearing these costs.

Despite the defendants assertion to the contrary, there have been a number of cases in which the Court directed the defendants in a class action suit to pay the costs of notice and distribution of relief. In *Catlett v. Missouri Highway and Transportation Commission*, 589 F.Supp. 949 (W.D.Mo.1984), the court ordered the defendants to bear the cost of a fund to be used for the purpose of locating class members entitled to relief as a result of finding of liability under Title VII. The court stated that the defendants should bear this cost because the liability of the defendant has been established and because of the substantiality of the cost involved. *Id.* at 952. The fund was needed to attempt to locate approximately two hundred class members whose whereabouts were unknown since they had moved without leaving a forwarding address. *Id.* at 950. *See also Meadows v. Ford Motor Company,* 62 F.R.D. 98, 102 (W.D.Ky.1973), *judgment modified on other grounds* 510 F.2d 939 (6th Cir.1975), *cert. denied* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976).

In *Kyriazi v. Western Electric Co.,* 465 F.Supp. 1141, 1144 (D.N.J.1979), a case involving the damage phase of a sex discrimination claim brought by approximately 10,-000 class members, the court ordered all costs of notification (including newspaper advertisements) to be borne by the defendant. In addition the court ordered that the costs of a special master, appointed to make determinations of the damage claims of the approximately 10,000 class members, be borne by the defendant. *Id.* at 1147–1148. *See also Stastny v. Southern Bell Tel. & Tel. Co.,* 458 F.Supp. 314, 353 (W.D. N.C.1978).

Based upon the ramifications resulting from the defendants intentional failure to properly maintain records in violation of 7 U.S.C. § 2045(e), *see* this Court's Order at pp. 15–16, filed September 6, 1985, the fact that the liability of the defendants will have already been established, and because there may be substantial costs involved in locating class members whose whereabouts are unknown, this Court directs the defendants to pay the costs of notice and distribution to individual class members.

In the plaintiffs' motion concerning distribution of relief to class members at p. 4, the plaintiffs ask the Court to reconsider its September 6, 1985 Order which directed each party to bear its own costs. However pursuant to rule 59(e), Federal Rules of Civil Procedure, a motion to alter or amend a judgment must be served not later than ten days after the entry of judgment. A court is not permitted to extend this ten day period. *See* 11 Wright and Miller, Federal Practice and Procedure § 2817 at p. 109 (1973). *See also Scola v. Boat Frances, R., Inc.,* 618 F.2d 147, 154 (1st Cir. 1980). This Court therefore denies plaintiffs' request to reconsider. Since costs of notice and distribution, discussed above, are not items of expense taxable as costs

under 28 U.S.C. § 1920, this Court's September 6, 1986 Order did not pertain to costs of notice and distribution.

### III. *Fluid Recovery (Cy Pres) Distribution*

In their motion concerning distribution of relief of class members at pp. 3–4, the plaintiffs assert that it is highly unlikely that all identified members of the plaintiff's class will be able to be located due to both the migratory nature of farmworking as well as the defendants' inadequate records.

■ A district court has "broad discretionary powers" in shaping an equitable decree involving the distribution of any unclaimed class action funds. *Van Gemert v. Boeing Co.,* 739 F.2d 730, 737 (2d Cir.1984). *See also* 2 Newberg on Class Actions, § 10.16 at p. 373. The equitable decree is to be a "special blend of what is necessary, what is fair, and what is workable." *Van Gemert,* 739 F.2d at 737 (citation omitted).

This Court has several options in exercising this discretionary power in regards to what should be done with the individually proven damage awards for identified class members who could not be located by reasonable efforts. This Court could direct that the undistributed funds 1) "be applied prospectively to the indirect benefit of the class" (fluid or cy pres distribution), 2) be placed in escrow for a set period after which the funds escheat to the government, or 3) be returned to the defendants. 2 Newberg on Class Actions, § 10.17 at 373–374.

In their motion concerning distribution of relief to class members at p. 4, the plaintiffs request that the remaining balance of damage funds be distributed through the "cy pres" or "fluid recovery" method of distribution. In specific, the plaintiffs request:

that any unclaimed balance of funds be placed in trust to be used for economic development[1] in those areas in Mexico in which the Plaintiffs reside. These funds can be matched and perhaps even doubled by working with the established international nonprofit organizations such as the Interamerican Development Fund and the American Friends Service Committee who have recognized experience and ability in handling such monies for the purpose of economic development in Mexico.

Plaintiffs' reply memorandum concerning distribution of relief to class members at p. 11.

The cy pres doctrine originated in the law of charitable trusts. When it became impossible to carry out the specific intent of the testator, courts would use the "next best" approach. The court would dispose of the funds in a manner which effectuates as closely as possible the testator's general intent. *See* E. Fisch, The Cy Pres Doctrine in the United States § 1 (1950). By analogy, this concept has been applied to the distribution of damages in class actions. When the entire damage fund is not claimed by class members, the fund is put to its "next-best" use which furthers the original purpose of compensation of individual victims. Note, *Cy Pres Damage Distribution,* 9 Georgia Law Review 893, 904 (1975). The terms cy pres or fluid recovery have been defined more broadly by certain courts "to refer to the entire procedure of classwide calculation of damages" followed by distribution of the whole amount or unclaimed amount in a "next-best" use fashion described above. 2 Newberg on Class Actions § 10.17 at 374 n. 127. As further discussed below the defendants are not requesting the broadly defined fluid

---

1. In their post trial reply brief at pp. 28–29, filed October 30, 1984, the plaintiffs explain that the goal of economic development would be to create job opportunities in Mexico where the plaintiff class members live. The plaintiffs contend that many immigrants from Mexico come to work in the United States out of economic ne- cessity (to support their families). The plaintiffs declare that the proposed fluid recovery distribution could help create jobs and economic development in Mexico so that neither the plaintiff class members nor their children would need to enter this country illegally.

recovery (a classwide calculation of damages), but rather are requesting the narrowly defined fluid recovery (distributing the unclaimed funds in a "next best" use fashion after the damages have been individually determined).

In their memorandum concerning appropriate methods for distributing relief to class members at pp. 3–4, the defendants assert that the Ninth Circuit Court of Appeals has "'clearly prohibited'" fluid recovery "in this kind of case". The defendants cite two Ninth Circuit cases to support this contention as well as the Second Circuit decision in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir.1973), *pet for reh en banc denied*, 479 F.2d 1020, *aff'd on other grounds* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). While the *In Re Hotel Telephone Charges*, 500 F.2d 86 (9th Cir.1974), and *Eisen* cases address the issue of fluid recovery, *Alvarez v. Longboy*, 697 F.2d 1333, 1340 (9th Cir.1983) simply does not.

Both the Ninth Circuit in *In Re Hotel Telephone Charges* and the Second Circuit in *Eisen* rejected the use of fluid recovery as a procedural device to allow the actual recovery of gross damages for the class as a whole, gross damages based upon the unsubstantiated claims of class members. In *Eisen*, the case cited as authority in *In Re Hotel Telephone Charges*, a statutory anti-trust class action suit was filed against two large odd-lot brokerage firms. The class of plaintiffs numbered 6,000,000 claimants each of whom were entitled on the average to $3.90 after the damages had been trebled. *Eisen* 479 F.2d at 1010. The *Eisen* plaintiffs recognized that the cost of obtaining proofs of claim by the individual members of the class and processing the claims would make the amounts payable to the individual claimants so low as to be negligible. *Eisen* 479 F.2d at 1017. The trial court decided that damages to "the class as a whole" could be substituted for individual proof of damages from the

6,000,000 claimants. *Eisen*, 479 F.2d at 1010. After determining the amount of damages, notices soliciting the filing of claims would be sent out. Since it was suspected that relatively few claims would be filed, the trial court decided that the huge residue could be used to benefit all the odd lot traders by reducing the surcharge fees imposed on odd lot investors (the odd lot "differential") until the fund was depleted. *Eisen*, 479 F.2d at 1011.

The Second Circuit Court of Appeals rejected this approach on the grounds that damages to the class as a whole could not be substituted for individual proof of damages. *Eisen*, 479 F.2d at 1014. While sympathetic to the goal of making "the wrongdoer pay for the wrongs he committed", the court insisted that this be done in a lawful fashion. *Eisen*, 479 F.2d at 1013. The court reasoned that the Enabling Act, the act authorizing the Supreme Court to promulgate the Federal Rules of Civil Procedure, provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantative right." *Eisen* 479 F.2d at 1014. The court recognized that Section 4 of the Clayton Act limits damages to actual damages[2]. *Eisen*, 479 F.2d at 1014. The court therefore concluded that permitting gross damages to the class as a whole would alter this substantative right. The court also held that if an individualized determination of damages was not assessed, the procedure would be an unconstitutional violation of due process of law. *Eisen*, 479 F.2d at 1018. The court also reasoned that the Security Exchange Commission has exclusive jurisdiction over setting the trade differential and that the District Court lacks the power to affect these rates by allowing fluid recovery. *Eisen*, 479 F.2d at 1011. Due to the sheer number of plaintiffs who would have to make this individualized determination of damages, the court determined pursuant to Rule 23(b)(3)(D), Federal Rules of Civil Procedure, that the class action was unmanageable. While the Second Circuit

**2.** The Act provides that "[a]ny person *who shall be injured in his business or property* by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold damages by him sustained" 15 U.S.C. § 15 (1970) (emphasis added).

Court of Appeals dismissed the suit on the grounds of both unmanageability problems and notice problems, the United States Supreme Court decision dealt only with the notice issue. Since the notice issue was dispositive, the Supreme Court expressly left the issue of fluid class recovery open. *Eisen*, 417 U.S. 156, 172 n. 10, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1974). Nevertheless the United States Supreme Court vacated the entire judgment of the Court of Appeals. *Eisen*, 417 U.S. 156, 179, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974).

The complaint in *In Re Hotel Telephone Charges*, 500 F.2d 86 (9th Cir.1974) involved "virtually every manageability question possible." Note, *Cy Pres Damage Distribution*, 9 Georgia Law Review 893, 912 (1975). The complaint alleged a nationwide conspiracy among forty-seven hotel chains and approximately six hundred individual hotels to increase room rates in violation of federal antitrust laws and state laws. *In Re Hotel Telephone Charges*, 500 F.2d at 88. The plaintiff class consisted of approximately forty million persons with an average recovery claim of approximately $2 per person. *Id.*

The Ninth Circuit rejected the use of fluid recovery that would permit "the actual recovery of gross damages for the class as a whole." *In Re Hotel Telephone Charges*, 500 F.2d at 90. The court stated:

We agree with the decision reached in *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir.1973), that allowing gross damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights under the antitrust statutes. Such enlargement or modification of substantive statutory rights by procedural devices is clearly prohibited by the Enabling Act that authorizes the Supreme Court to promulgate the Federal Rules of Civil Procedure.

*In Re Hotel Telephone Charges*, 500 F.2d at 90.

Having determined that an individual determination of damages is necessary, the court, like the Second Circuit in *Eisen*, held that class action treatment was improper due to manageability problems. Like the Ninth Circuit in *In Re Hotel Telephone Charges* and the Second Circuit in *Eisen*, this court will not permit the class of plaintiffs to recover "gross damages for the class as a whole" based upon "unsubstantiated claims of class members." This Court rejected the gross damage approach despite the fact that the FLCRA permits a plaintiff to recover statutory damages or actual damages while both *In Re Hotel Telephone Charges* and *Eisen* involved claims under the anti-trust statute which is limited to actual damages. Rather than permit gross damages to the class as a whole, this Court, as described above, has developed a careful procedure to substantiate the statutory damage claims of each identified class member in regards to each particular defendant.[3] After the parties have completed this painstaking procedure, this Court will determine if the parties have met their burden of proof in regards to each individually identified plaintiff's claim. Once these individual damage determinations are made the status of the case at bar will be materially different than the status of the case before the courts in *In Re Hotel Telephone Charges* and *Eisen*. While the individual class claimants in *In Re Hotel Telephone Charges* and *Eisen* had failed to prove their individual damages, in the case at bar there will be no remaining questions concerning each class claimant's individual statutory damages. Like the situation in *Green v. Occidental Petroleum Corporation*, CCH Federal Securities Law Reporter § 94,397 at 95,359 (C.D.Cal.1974), in which each class claimant's damages were to be individually de-

---

**3.** In contrast to the courts in *In Re Hotel Telephone Charges* and *Eisen*, this Court has neither in the past nor in the present foreseen any class manageability problem as a result of making these individual damage determinations. In contrast to the approximately forty million plaintiffs in *In Re Hotel Telephone Charges*, 500 F.2d at 88, and the six million plaintiffs in *Eisen*, 479 F.2d at 1008, the plaintiffs in the case at bar identified 1472 plaintiffs in their amended exhibit 20, filed May 22, 1986.

termined, the "damage determination problems inherent in *Eisen III, supra,* are not present in the instant case...."

The plaintiffs in *In Re Hotel Telephone Charges* and *Eisen* sought to use fluid recovery as a mechanism to avoid the necessity of proving individual damages. *See* Trangsrud, *Mass Tort Joinder,* 70 Cornell Law Review, 779, 844 n. 347. In contrast the plaintiffs in the case at bar have sought to use fluid recovery for a much narrower purpose. The plaintiffs request the use of fluid recovery as a method to distribute any remaining unclaimed damage funds after this Court had determined the defendants liability at trial, after the claimants have been identified, and after each defendants liability to each individual plaintiff has been established.

In exercising this Court's broad discretionary power to develop an equitable decree involving the distribution of any unclaimed class action funds, *see Van Gemert v. Boeing Co.,* 739 F.2d 730, 737 (2d Cir.1984), this Court is guided by the principles set forth in *Simer v. Rios,* 661 F.2d 655 (7th Cir.1981), *cert. denied* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). Rather than reject fluid recovery out of hand, the Seventh Circuit in *Simer v. Rios,* 661 F.2d 655 (7th Cir.1981), *cert. denied* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982), applied a careful case by case determination of whether fluid recovery is appropriate. The approach was not based upon whether the parties themselves had agreed to fluid recovery in a settlement agreement (the Seventh Circuit's decision affirmed a district court's decision vacating its earlier order approving a class settlement which had a fluid recovery component). The court stated:

> In this approach we focus on the various substantive policies that use of a fluid recovery would serve in the particular case. The general inquiry is whether the use of such a mechanism is consistent with the policy or policies reflected by the statute violated.

*Simer,* 661 F.2d at 676.

The Ninth Circuit's discussion of the FLCRA reveals that policies reflected in the FLCRA are compensation to the injured parties and enforcement of the act. Initially violations of the act were punished by revocation of registration or criminal prosecution with a fine up to $500. *Alvarez v. Longboy,* 697 F.2d 1333, 1335 (9th Cir.1983). Realizing that the Act had "failed to achieve its objectives", Congress corrected the act's deficiencies, in part, by providing for a private right of action for either actual damages or statutory damages. *Id.* The provision for damages contemplates compensation. *Rivera v. Anaya,* 726 F.2d 564, 569 (9th Cir.1984). In addition "the legislative history clearly establishes [that] Congress wished to strengthen the enforcement of the Act, and regarded the private remedy created by section 2050a as an important means of accomplishing this purpose." *Alvarez,* 697 F.2d at 1339.

■ In *Simer,* 661 F.2d at 676, the court stated that whether the statute has a compensatory purpose weighs in favor of fluid recovery. Fluid recovery distribution of any remaining unclaimed funds advances the compensatory policy behind the FLCRA. The purpose of fluid recovery is to indirectly compensate the plaintiffs who cannot be directly compensated. "In effect the court is saying that since individual redress is impossible or infeasible, the fund should be used for the 'next best' available purpose which furthers the original purpose of compensation of individual victims." Note, *Cy Pres Damage Distribution,* 9 Georgia Law Review, 893, 905 (1975). *See* 2 Newberg on Class Actions § 10.23.

Fluid recovery distribution of any remaining unclaimed funds advances the enforcement policy behind the FLCRA as well. The logical repercussion of granting fluid recovery distribution would be to encourage any other farmworkers whose statutory rights are being violated to enforce the statute by filing suit. In this Court's Order at p. 16, filed September 6, 1985, this Court found that "[t]he defendants' violations of the housing and record

keeping requirements of FLCRA were intentional within the meaning of the Act." In contrast to having the undistributed damages revert back to the defendants, which would in effect reward the defendants for their inadequate record keeping, fluid recovery distribution would serve to compel observance of the statute.

The FLCRA was repealed on January 14, 1983. However the policies underlying the FLCRA, compensating injured parties and encouraging enforcement of the substance of the statute, remain important policies in the new Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801, *et seq.* For instance the new act retains the private right of action and permits suits to be filed by any aggrieved person for actual or statutory damages "without regard to the citizenship of the parties." 29 U.S.C. § 1854. The new act departs from the FLCRA by exempting an "agricultural employer" from the act's registration requirements. *Mendoza v. Wight Vineyard Management,* 579 F.Supp. 268, 271 (N.D. Cal.1984), *aff'd* 783 F.2d 941 (9th Cir.1986). (In the case at bar this Court did not award any damages for the defendants failure to register. *See* this Court's Order at pp. 12, 18, filed September 16, 1985.) However the court in *Mendoza* stated that it

> wishes to emphasize that exemption from the registration requirements of the act *does not* carry with it exemption from the substantive protective provisions of the Act concerning *e.g.,* housing, working conditions and transportation. The legislative history particularly notes the applicability of the protective provision to *all* employers of migrant and/or seasonal workers. H.R.Rep. No. 885, 97th Cong., 2d Sess. 12, *reprinted in* 1982 U.S. Code Cong. & Ad. News 4547, 4558.

*Mendoza,* 579 F.Supp. at 270 n. 5 (emphasis in original). (In the September 6, 1985 Order this court awarded damages for violations of housing, transportation, and other substantive protective provisions.)

The use of fluid recovery furthers the substantive policies underlying the FLCRA far better than the alternatives. Simply dividing the remaining funds among the located class members would provide an unacceptable windfall to located class members at the expense of compensating, at least indirectly, the unlocatable class members. Turning over the remaining funds to the government, *e.g. Re Folding Carton Antitrust Litigation,* 744 F.2d 1252, 1255 (7th Cir.1984), *cert. dismissed,* —— U.S. ——, 106 S.Ct. 11, 86 L.Ed.2d 269 (1985), which is different than the state suing in its capacity as *parens patriae, see Hawaii v. Standard Oil,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), increases the likelihood that those who benefit will not be those who were originally harmed." Note, *An Economic Analysis of Fluid Class Recovery Mechanisms,* 34 Stanford Law Review, 173, 180–181 (1981). This Court believes that it is better to indirectly compensate the unlocated injured parties through fluid recovery than to return the funds to the defendants who have been adjudicated liable. The use of fluid recovery distribution will not result in an invalid punishment since the maximum amount of money to be distributed through fluid recovery can be no more than the total amount of individually determined statutory damages.

■ This Court directs the plaintiffs to file a detailed proposal for a fluid recovery distribution within thirty days after this Court has completed the adjudication of each identified class claimants individual damages. The plaintiffs are to keep in mind the following principle from Note, *Damage Distribution in Class Actions,* 39 University of Chicago Law Review 448, 464 (1972):

> The acceptability of any cy pres damage distribution mechanism can be best measured by balancing (1) the extent to which the injured class receives the damages, (2) the cost of applying the remedy, and (3) the equitability of the distribution with respect to the potential of windfalls for nonclass members.

A critical factor this court will use in evaluating any specific proposal presented will be whether there is as great an overlap as reasonably possible between the non-direct-

ly compensated class members and the parties who will be benefitted by the fluid recovery distribution.

### IV. *Attorney Fees*

■ Both the plaintiffs' memorandum and the defendants' memorandum concerning appropriate methods for distributing relief to class members discuss attorneys' fees in passing. However to date the plaintiffs have not filed a motion for attorneys' fees. In order to facilitate the orderly progression of this case, this Court directs the plaintiffs to file their motion for attorney fees, if they wish to file such a motion, within sixty days from the date of this Order. In their memorandum the plaintiffs should not only specify the legal basis for their request, but also specify and apply the appropriate standards. *See Kerr v. Screen Extras Guild,* 526 F.2d 67, 70 (9th Cir.1975) *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). *See also* A. Miller, Attorneys' Fees in Class Actions (Federal Judicial Center 1980).

Based upon the foregoing:

This Court orders the following in regards to the issues addressed in Plaintiffs' Motion Concerning Distribution of Relief to Class Members, filed March 25, 1986, and the Defendants' Memorandum Concerning Appropriate Methods For Distributing Relief to Class Members, filed March 24, 1986.

1. IT IS ORDERED that the plaintiffs provide the defendants with a detailed proposal regarding sending a team of individuals into several areas in Mexico for the purpose of identity verification, if the plaintiffs still want the Court to consider the proposal, within thirty days from the date of this Order.

2. IT IS FURTHER ORDERED that the parties attempt to work out a joint proposed detailed procedure (covering who, where, when, and what) regarding notice to the identified class claimants (and the specific content of the notice), regarding verification of the identities of individual class members, and regarding distribution of the statutory money damages to verified class claimants. The joint written procedure shall be in accord with the Court's discussion of these issues above. The joint written procedure is to be filed within sixty days from the date of this Order. If there remains any procedures regarding notice, identity verification, or distribution to verified class claimants that the parties cannot agree to, each party shall simultaneously file, within thirty days from the date of the filing of the joint written procedure, a motion stating what specific procedures they further recommend that the Court adopt. A memorandum accompanying the motion should set out the reasons why the court should adopt their particular additional recommendations. Within fifteen days following the filing of opposing parties' motion and memorandum, the parties shall file a response. A reply may be filed within five days of the filing of the opposing parties' response.

3. IT IS FURTHER ORDERED that the defendants are to pay the costs of notice and distribution to individual plaintiff class claimants.

4. IT IS FURTHER ORDERED that the plaintiffs' request that this Court reconsider the portion of the Court's September 6, 1985 Order which directed each party to bear its own costs is denied.

5. IT IS FURTHER ORDERED that the plaintiffs file a detailed proposal for fluid recovery distribution (covering who, when, where, and what) within thirty days after this Court has completed adjudicating each identified class claimant's individual statutory damages. The defendants are directed to file a response within twenty days after the plaintiffs file their detailed proposal. The plaintiffs may file a reply within ten days after the defendants file their response.

6. IT IS FINALLY ORDERED that the plaintiffs file their motion for attorneys' fees, if they choose to file such a motion, within sixty days from the date of this Order. In their memorandum accompanying the motion, the plaintiffs should not only specify the legal basis for their request, but also apply the appropriate standards. The defendants are directed to file

their response to plaintiffs' motion for attorneys' fees within thirty days after the plaintiffs file their motion for attorneys' fees. The plaintiffs may file a reply within fifteen days after the defendants file their response.